**V.L. CROSS, et al., Plaintiffs-Appellants,**

v.

**Howell K. LUCIUS, et al.,
Defendants-Appellees.**

**No. 82–3159.**

United States Court of Appeals,
Fifth Circuit.

Sept. 2, 1983.

Paul Henry Kidd, Paul Kidd, Jr., Monroe, La., for plaintiffs-appellants.

Watson, Murchison, Crews, Arthur & Corkern, Arthur C. Watson, Natchitoches, La., Edgar Perkins, Jr., DeQuincy, La., Blanchard, Walker, O'Quin & Roberts, John T. Cox, Jr., Shreveport, La., for Lucius et al.

William J. Guste, Jr., Atty. Gen., Charles E. Welsh, Shreveport, La., for Guste, Burges and Pickett.

Before CLARK, Chief Judge, THORN-BERRY and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

On appeal, the plaintiffs challenge the district court's dismissal of their case with prejudice for failure to state a claim upon which relief can be granted. *See* Fed.R. Civ.P. 12(b)(6). For the reasons set forth below, we affirm.

■ Because the district court dismissed this case under Fed.R.Civ.P. 12(b)(6), we must accept all of the plaintiffs' well-pleaded allegations as true and give them the benefit of all reasonable inferences for the purposes of this review. *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). The events giving rise to this litigation are already nearly half a century old. In the 1920s, R.J. Lucius, Jr., allegedly forged several deeds naming himself as vendee in the sale of the disputed land from the Cross ancestors. Most of the deeds carry the crudely affixed "x" marks of the vendors even though other official records show that the purported vendors knew how to write their names out in full. Four years later, in 1934, R.J. Lucius, Jr., caused the local sheriff to arrest a certain Irving Cross, who was the last of the plaintiffs' ancestors to live on the disputed property. Cross was handcuffed and allowed to languish in jail for five days until he and his family agreed to leave the property. After the passage of nearly fifty years, the descendants of R.J. Lucius, Jr., still occupy the disputed acreage.

Plaintiffs V.L. Cross and Rufus Cross, for themselves and on behalf of all of their similarly situated relatives, have sued six of the descendants of R.J. Lucius, Jr., (the "Lucius defendants") for $400,000 in damages and a declaration that the allegedly fraudulent deeds conveying the property from the Crosses to Lucius are null and void. The plaintiffs maintain that the wrongful deprivation of their ancestors' land was accomplished in violation of 42 U.S.C. §§ 1983, 1985(3) (Supp. V 1981). The plaintiffs have also requested declaratory and injunctive relief against Louisiana district court judges Burgess and Pickett, Louisiana Governor David Treen and Attorney General William Guste (the "state defendants") should the court find that the plaintiffs' action against the Lucius defendants is barred by the Louisiana prescriptive statutes. In that event, the plaintiffs asked the court to declare the statutes unconstitutional and to enjoin the Louisiana judges from enforcing the statutes without first appointing counsel to inquire into the circumstances which prevented the plaintiffs from bringing suit.

The district court dismissed the plaintiffs' action against the Lucius defendants on the ground that R.J. Lucius, Jr.'s descendants could not be held liable for his wrongful taking of the property from the plaintiffs' ancestors:

> The only allegation is that defendants were denied their rights to equal protection under the law and to due process of law by Mr. R.J. Lucius Jr. when he took the subject property from the plaintiffs' ancestors in title .... Under no theory of law of which this court is aware may the descendants of Mr. Lucius be held liable for his actions.

Record at 64–65. In essence, the court concluded that the sins of the fathers would not be visited upon the children.[1] In legal parlance, it concluded that the Cross ancestors' cause of action against the Lucius ancestor for his tortious conduct did not survive the deaths of the original parties. The problem with the court's approach, a problem caused at least in part by the plaintiffs' inartfully drawn pleadings, is in its assumption that this is indeed an action sounding in tort. The case may also be characterized as a suit by the Cross heirs about the present deprivation of their property. Viewed in this way, the suit is not a survivors' action at all, but an action analogous to the Louisiana petitory action to obtain recognition of the plaintiffs' owner-

---

1. *But see* Exodus 20:5.

ship of the land. *Cf. Robertson v. Wegmann,* 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978) (analogous state survivorship statute applied in section 1983 action as long as state statute is not inconsistent with federal policies). The Lucius descendants would be the proper defendants in such an action since they are in present possession of the land. La.Code Civ.Proc.Ann. art. 3651 (West 1961), *amended by* La.Code Civ.Proc.Ann. art. 3651 (Supp.1983).[2]

The Lucius defendants requested dismissal of the plaintiffs' action on the ground that it was barred by the Louisiana prescriptive statutes, as well as on the grounds that there were no allegations of tortious conduct for which relief could be granted and that the complaint failed to state a claim upon which relief could be granted. Because the statute-of-limitations defense provides a more well-marked path to a resolution of this case, we have chosen to take that route rather than the district court's.[3] In so doing, however, we do not hold or mean to imply that the plaintiffs have stated a cause of action under 42 U.S.C. §§ 1983, 1985(3).

■■■ A statute-of-limitations defense may be raised in a motion to dismiss under Fed.R.Civ.P. 12(b)(6), but the defense is subject to the traditional rule that the motion cannot be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Abdul-Alim Amin v. Universal Life Insurance Co.,* 706 F.2d 638, 640 (5th Cir.1983) (quoting *Mann v. Adams Realty Co.,* 556 F.2d 288, 293 (5th Cir.1977)). Because sections 1983 and 1985 contain no limitation provisions, we look to analogous state statutes to determine whether the action is time-barred, as long as application of the statutes is not inconsistent with federal policies. *Board of Re-*

*gents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). While we are again confronted with the difficulty of determining which state statute is analogous, we hold that the case is barred by the prescription statutes, regardless of which one is deemed to apply.

■■■ Under Louisiana law, an action for an "offense or quasi offense" against the person or property must be brought within one year. La.Civ.Code Ann. art. 3536 (West 1953); *see, e.g., Madden v. Madden,* 353 So.2d 1079 (La.App.1977) (wrongful seizure of personal property). Similarly, article 3536 requires a person to bring an action to "restore possession of the property" within one year, and the owner of land or other property "injured, cut, damaged or destroyed" has one year to bring an action from the "date knowledge of such damage is received." La.Civ.Code Ann. art. 3537 (West 1953). We have previously upheld the application of the general tort prescriptive statute, article 3536, *supra,* in a number of civil rights cases. *See, e.g., Jones v. Orleans Parish School Board,* 688 F.2d 342, 344 (5th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 2420, 76 L.Ed.2d —— (1983) (job discrimination). Even if the plaintiffs could not have obtained a lawyer to represent them until the 1960s or 1975, as they allege in their complaint, if their action concerns R.J. Lucius' tortious conduct against the Cross ancestors, it would have prescribed under article 3536 irrespective of the applicability of .the doctrine of *contra non valentem, infra,* since the plaintiffs did not file their action until June 9, 1981.

■■■ The plaintiff's claim could also be analogized to a petitory action for the recognition of ownership of the property. *See* art. 3651, *supra.* A party's ability to maintain a petitory action is governed by the "acquisitive" prescription statutes rather

---

**2.** We note, however, that the plaintiffs have not included the "indispensable prerequisite . . . to a petitory action," of a prayer "to be recognized as owners and [to have] defendants deliver possession to them." *See Matthews v. Carter,* 138 So.2d 205, 210 (La.App.1962) (quoting *Young v. Anderson,* 43 So.2d 280 (La.App. 1949)).

**3.** We may, of course, affirm the district court's decision on any ground urged below, regardless of whether it was relied on by the district court. *Bickford v. Int'l Speedway Corp.,* 654 F.2d 1028, 1031 (5th Cir.1981).

than the "liberative" prescription statutes. Article 3474 provides: "Immovables are prescribed for by ten years, when the possessor has been in good faith and held by a just title during that time." La.Civ.Code Ann. art. 3474 (West 1953 & Supp.1983). Article 3475 provides: "Immovables are prescribed for by thirty years without any title on the part of the possessor, or whether he be in good faith or not." La.Civ.Code Ann. art. 3475 (West 1953 & Supp.1983). If the plaintiff has not been in possession of the property for more than thirty years, his or her petitory action is "barred by effect of law" and should be dismissed. *Montgomery v. Breaux,* 297 So.2d 185, 187 (La.1974); *but see Yount v. Copellar,* 374 So.2d 726, 728 n. 1 (La.App.1979) (criticizing rule); *Suire v. Primeaux,* 363 So.2d 963, 967 (La.App.1978) (Culpepper, J., concurring) (same).

The plaintiffs argue, however, that the ancient rule that "statutes of limitation do not run against those incapable of acting" should apply, thereby tolling the running of the statutes. The gist of this argument is that blacks in northern Louisiana have been incapable of bringing suits against whites for the past fifty years because racial prejudice, allegedly built into northern Louisiana society, prevented them from obtaining financial backing and legal representation.

The Louisiana doctrine suspending the statutes of limitation for those incapable of acting—*contra non valentem agere nulla currit praescriptio*—generally applies only in extremely limited circumstances. Section 3521 of the Civil Code expressly provides that "[p]rescription runs against all persons, unless they are included in some exception established by law." La.Civ.Code Ann. art. 3521 (West 1953).[4] Because the doctrine of *contra non valentem* is a judicially-created exception to the general statutory rule, the courts have been reluctant to apply the exception. *See Jackson v. Zito,* 314 So.2d 401, 406 (La.App.), *writ denied,* 320 So.2d 553 (La.1975). In *Corsey v. State,* 375 So.2d 1319 (La.1979), the Louisiana Supreme Court reviewed the four situations in which the doctrine of *contra non valentem* is normally applied:

> (1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) Where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; . . . (3) Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action . . . [;] and (4) Where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

*Id.* at 1321–22 (emphasis deleted and citations and footnotes omitted). The *Corsey* court added a fifth situation to the list— where the plaintiff's mental incapacity is the result of the defendant's wrongful conduct—but it restated the traditional rule that neither a person's physical illness nor his mental incapacity (unless he has been interdicted) will toll the prescriptive statutes. *Id.* at 1323.

A Louisiana Court of Appeals recently refused to apply the *contra non valentem* doctrine in a case similar to this one. In *Grant v. Carroll,* 424 So.2d 389 (La.App. 1982), the plaintiff contended that the prescriptive period governing her medical malpractice action should have been suspended during the two-to-three-year period in which she had been unable to find an attorney to represent her. The appellate court disagreed and noted that

> the defendant . . . did not act to prevent plaintiff from timely pursuing her claim nor was plaintiff ignorant of her cause of

---

4. Article 3521 was repealed and reenacted in 1982. While the reenactment did not change the law, it now makes clear that "[p]rescription runs against all persons unless exception is established by *legislation.*" La.Civ.Code Ann. art. 3467 (West Supp.1983) (emphasis added).

The doctrine of *contra non valentem,* a judicially-created exception to prescription, is applied as an exception to the rule of article 3521. *Corsey v. State,* 375 So.2d 1319, 1321 (La. 1975).

action .... Further, there was no legal cause which prevented the attorneys from taking cognizance of or acting upon plaintiff's claim. Rather, the attorneys either declined for personal reasons or because they were of the opinion that plaintiff's claim had prescribed. Therefore, the prescriptive period of one year from the date of plaintiff's knowledge of the alleged negligent act was not tolled. *Id.* at 392. Here, as in *Grant,* there is no allegation that the Lucius defendants, or even their ancestor, prevented the plaintiffs from pursuing their claim or kept them in ignorance of their cause of action, nor was there any legal barrier to the plaintiffs' bringing this action. It would seem that the plaintiffs did not even try to contact an attorney until they obtained their present counsel. We conclude that the Louisiana courts would not apply the *contra non valentem* doctrine to the plaintiffs' case.

Having concluded that the plaintiffs' claim would be barred by the Louisiana prescriptive statutes, we must determine whether the application of those statutes would be inconsistent with the federal policy underlying the civil rights statutes. *Tomanio, supra,* 446 U.S. at 486, 100 S.Ct. at 1796. We find no inconsistency here. Even if the plaintiffs' allegations that they could not have obtained legal representation during the earlier part of this century because no lawyer would represent a black person in a suit against a white person are true, the plaintiffs conceded at oral argument that this situation had improved by the 1960s, perhaps as a result of the upsurge in civil rights litigation during that period. The plaintiffs still delayed twenty years from that time until they brought this action.

■ Further, the policies underlying the civil rights statutes include the compensation of persons injured by the deprivation of federal rights and the prevention of abuses of power by those acting under color of state law. *Robertson v. Wegmann,* 436 U.S. 584, 590–93, 98 S.Ct. 1991, 1995–96, 56 L.Ed.2d 554 (1978). While the sheriff who allegedly aided R.J. Lucius, Jr., in taking the Cross ancestors' property away fifty years ago may have been acting under color of state law, *see Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (law enforcement officer acting in concert with private party), the lawyers and financial institutions who allegedly refused to aid the plaintiffs during the first half of the century were not. *See Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (public defender's performance as counsel in state criminal proceeding not action under color of state law within the meaning of section 1983); *cf. Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (actions of regulated private utility not state action). Since the difficulty of obtaining counsel to represent black people in a suit against white people is concededly a relic of the past, the application of the Louisiana prescriptive statutes to a case such as this one will not undermine the policies of the civil rights statutes. Accordingly, we hold that the plaintiffs' claim against the Lucius defendants was properly dismissed.

■ Our conclusion that the application of the Louisiana prescriptive statutes is not inconsistent with federal law would also resolve the plaintiffs' claim against the state defendants that the prescriptive statutes are unconstitutional as applied. We have no jurisdiction to reach the plaintiffs' claim against the state defendants, however, because there is presently no live case or controversy between the plaintiffs and the state defendants.

It is hornbook law that one who "would invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons,* —— U.S. ——, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983) (citing *Flast v. Cohen,* 392 U.S. 83, 94–101, 88 S.Ct. 1942, 1949–1953, 20 L.Ed.2d 947 (1968)). "The basic inquiry is whether the 'conflicting contentions of the parties ... present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not

hypothetical or abstract.'" *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) (quoting *Railway Mail Association v. Corsi,* 326 U.S. 88, 93, 65 S.Ct. 1483, 1487, 89 L.Ed. 2072 (1945)). A brief recitation of the facts alleged in the plaintiffs' complaint demonstrates that the alleged dispute between the plaintiffs and the state officials in this case has not ripened into the definite and concrete controversy necessary for our adjudication of the plaintiffs' claims.

The plaintiffs sued the state judges as members of a class of judges who apply the Louisiana prescriptive statutes, and who allegedly would not make any inquiry into whether the plaintiffs could not have brought their claim earlier because black persons could not obtain legal and financial assistance. The plaintiffs also complain that the state judges do not appoint counsel to represent plaintiffs "threatened with the loss of real property rights in executory proceedings." The plaintiffs, however, have never filed their claim in state court; hence, we have no way of knowing whether the state court judges would in fact apply the state prescriptive statutes as the plaintiffs fear.

While the case law discussed *supra* indicates that the state courts would reject the plaintiffs' suggested application of the doctrine of *contra non valentem,* we can only speculate at this point that *if* the plaintiffs filed their case in state court, the Lucius

defendants *might* plead a prescriptive bar, the state courts *might* not inquire into the reasons for the plaintiffs' delay in bringing this action and *might* not appoint counsel to represent them. We know little more about the contents of the plaintiffs' claim than did the Supreme Court in *Ashcroft v. Mattis,* 431 U.S. 171, 97 S.Ct. 1739, 52 L.Ed.2d 219 (1977), when the Court was unable to consider the merits of a claim where the plaintiff alleged that he "ha[d] another son who 'if ever arrested or brought under an attempt at arrest or suspicion of a felony, *might* flee or give the appearance of fleeing, and would therefore be in *danger* of being killed by these defendants ....'" *Id.* at 172 n. 2, 97 S.Ct. at 1740 n. 2 (emphasis in original). The plaintiffs' hypothetical controversy with the state defendants simply has not ripened into a definite and concrete dispute capable of judicial resolution.[5]

The district court's dismissal of the plaintiffs' action is AFFIRMED.

CLARK, Chief Judge, concurring:

While my analysis differs from that of the majority, I reach the same result.

The plaintiffs brought this suit under 42 U.S.C. §§ 1983 and 1985(3). These statutes provide a federal right of action to persons whose federally guaranteed rights are violated. The right of action conferred is expressly limited. It can only be brought against the person who was the violator.[1]

---

**5.** Other than naming them as defendants in this lawsuit, the plaintiffs have not offered any indication of what kind of controversy might exist between the plaintiffs and the state governor and attorney general, nor did they bother to serve these defendants with copies of the complaint or notice of the proceedings before the district court.

**1.** Section 1983 provides:
> *Every person who,* under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, *subjects, or causes to be subjected,* any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, *shall be liable* to the party injured in an

action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.
> (Emphasis added.)
> Section 1985(3) provides:
>> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal

This action does not assert that any named defendant violated federally protected rights of any plaintiff. For me, this is enough to affirm the district court's 12(b)(6) dismissal.

Section 1988 teaches that we should look to state law in determining whether a cause of action under the civil rights statutes survives the death of a plaintiff or defendant.[2] *See Robertson v. Wegmann,* 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978); *Brazier v. Cherry,* 293 F.2d 401 (5th Cir.), *cert. denied,* 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961); *Pritchard v. Smith,* 289 F.2d 153 (8th Cir.1961). *See also Moor v. County of Alameda,* 411 U.S. 693, 702 n. 14, 93 S.Ct. 1785, 1792 n. 14, 36 L.Ed.2d 596 (1973). This principle has not been extended, however, to cases such as this,[3] and in my view it could not be. Here the alleged wrongdoer has been dead for decades. The defendants named in this suit are not here as survivor-representatives of the deceased violator but only because they happen to be successors-in-title to the only person the statutes allow to be sued. If they were complete strangers to the original R.J. Lucius and just happened to have purchased the property, the claim would be the same: R.J. Lucius acted under color of law to deprive our ancestors of this land, we are the rightful owners of title, give us back our land. Allowing the plaintiffs to proceed against these parties under sections 1983 and 1985(3) would create a right of action which these statutes do not grant. If those who hold the property that person acquired are to be made accountable, it must be under

state property law, not these statutes. I agree with the district court: There is no room in these civil rights statutes for the sins of the father to be visited upon his children.

This view is consistent with *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which held the doctrine of respondeat superior inapplicable to actions brought under section 1983. In reaching this conclusion, the *Monell* Court emphasized that the language of section 1983 imposes liability only on the wrongdoer. *Id.* at 691–92, 98 S.Ct. at 2036. Therefore, for a city to be held liable under section 1983, the city itself, rather than a city employee, must have subjected the plaintiff to a deprivation of a federally secured right. *Monell* thus makes clear that a plaintiff who brings a civil rights action that is analogous to a state claim may not utilize concepts of state law applicable to that claim (such as respondeat superior) that are inconsistent with the plain words of the civil rights statute under which he brings his claim.

The majority finds hidden in the plaintiffs' inartfully-drawn complaint "an action analogous to the Louisiana petitory action," *ante,* at 155, the Louisiana civil-law version of an action to try title. I am not certain whether the majority means this is a civil rights claim that is analogous to a petitory action or a pendent state claim under the Louisiana petitory statute. If the former is intended, I would follow the analysis above instead of that relied on by the majority. If the latter is what is

protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and

exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, *against any one or more of the conspirators.*
(Emphasis added.)

2. 42 U.S.C. § 1986 contains a limited survivability provision applicable only to actions under section 1985.

3. The cases have applied state survivorship rules where the person whose rights were violated died before or after suit was filed or where the violator died after suit was filed.

meant, I would construe the district court's action as an exercise of its broad discretion to dismiss a pendent state claim where the underlying federal claim is resolved before trial. *See Hondo Nat. Bank v. Gill Saw. Assn.,* 696 F.2d 1095, 1102 (5th Cir.1983).

Because either analysis would require dismissal without delving into the Louisiana law of prescription, I, like the majority, find it unnecessary to resolve the question whether application of the prescription statutes to the plaintiffs is unconstitutional.