Wallace WATTS, Plaintiff-Appellant,

v.

Odom GRAVES, Sheriff, et al.,
Defendants-Appellees.

No. 83–3135
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 12, 1983.

Wallace Watts, pro se.

Burgess & Lee, John R. Burgess, Livingston, La., for Graves and Stewart.

J. Marvin Montgomery, Baton Rouge, La., for Rowe.

James E. Kuhn, Asst. Dist. Atty., Denham Springs, La., for Sibley.

Durrett, Hardin, Hunter, Dameron & Fritchie, H. Evans Scobee, Baton Rouge, La., for Tridico, Buie and Painter.

Before REAVLEY, RANDALL and WILLIAMS, Circuit Judges.

PER CURIAM:

Appellant-petitioner, Wallace Watts, brought a section 1983 action against twelve persons who he alleged had acted to deprive him of rights guaranteed by the United States Constitution. The district court dismissed Watts' complaint for failure to state a claim upon which relief could be granted. We affirm in part and reverse and remand in part.

*Facts and Procedural Background*

In the early months of 1980, Watts became the subject of an investigation into alleged narcotics sales conducted by the Detective Divisions of the Sheriff's Departments of Ascension and Livingston Parishes. The investigation was conducted through the use of a confidential informant, who made several narcotics purchases while fitted with an electronic transmitter, permitting the substance of the conversations between the confidential informant and Watts to be overheard and recorded by law enforcement officials.

Based upon this information, search warrants were issued on March 21, 1981 by the Twenty-First Judicial District Court, authorizing the search of Watts' residence. Among the items seized in the search were quantities of cash and several safety deposit

box keys. On March 24, 1981, search warrants were applied for in the Parishes of Ascension and Livingston to search safety deposit boxes in Watts' name in those parishes.[1] A search of those boxes produced large sums of cash.

On June 1, 1981, Watts pleaded guilty in a Louisiana court to distribution of a schedule II controlled substance and received a sentence of twenty years imprisonment and a $15,000 fine. Based upon an apparent "misunderstanding" concerning his plea bargain, Watts then sought state post-conviction relief. The state judge found that Watts' plea bargain had not been kept and resentenced Watts to five years imprisonment and a $5,000 fine.

Two months later, while incarcerated at Louisiana's Hunt Correctional Center, Watts brought this *pro se* section 1983 suit in federal district court against twelve individuals who had brought about his arrest and conviction.[2] Named as defendants are The Honorable Samuel T. Rowe, Judge, Twenty-First Judicial District; Odom Graves, Sheriff, Livingston Parish; James A. Sibley, Police Jury President, Livingston Parish; Wayne Sanders, Deputy Sheriff, Livingston Parish; Hayden Berry, Deputy Sheriff, Livingston Parish; Dillard Stewart, Deputy Sheriff, Livingston Parish; Harold Tridico, Sheriff, Ascension Parish; Elamen Bobbin, Police Jury President, Ascension Parish; Eddie Buie, Deputy Sheriff, Ascension Parish; Murphy Painter, Chief Deputy Sheriff, Ascension Parish; and "Suzie," confidential informant, Sheriff's Department, Livingston Parish. Watts' complaint contains three allegations: (1) the interception of oral communications between him and the informant "Suzie" was accomplished without a warrant in violation of the fourth and fourteenth amendments; (2) the granting of the subsequent warrant to search his home on the basis of the illegally intercepted oral communications was improper in violation of the fourth and fourteenth amendments; and (3) the search of his safety deposit boxes was accomplished without a warrant in violation of the fourth and fourteenth amendments. The district court referred the matter to a magistrate, who ordered the defendants served. Three defendants filed an answer and all defendants moved to dismiss for failure to state a claim.

The magistrate issued his recommendations to the district court judge on September 29, 1982, recommending that Watts' action be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The magistrate apparently understood the gist of the complaint to be that no warrant was obtained prior to the recording of Watts' conversations. On the basis of the Supreme Court's opinion in *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), in which the Court held that the Constitution does not require a warrant before conversations are overheard or recorded by law enforcement officials when done with the consent of one of the conversants, the magistrate found that "plaintiff's constitutional right to be protected against unreasonable searches and seizures was not violated, and plaintiff has failed to state a claim." Record on Appeal at 120–27. The district court adopted the magistrate's recommendations and dismissed the action. From this judgment, Watts appeals.

*Standard of Review*

 In testing the sufficiency of a section 1983 complaint, it must be remembered that the complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts which

---

1. It is unclear from the record whether these search warrants were ever obtained.

2. Section 1983 provides in pertinent part:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
   42 U.S.C. § 1983 (1976).

would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Richardson v. Fleming,* 651 F.2d 366 (5th Cir.1981). The allegations of the complaint, particularly a *pro se* complaint, must be accepted as true, along with any reasonable inferences that may be drawn therefrom. *Ryland v. Shapiro,* 708 F.2d 967 (5th Cir.1983). "A prisoner's *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Richardson v. Fleming,* 651 F.2d at 368 (quoting *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). With this standard in mind, we examine the dismissal of Watts' complaint.

*Rule 12(b)(6) Dismissal*

■ To the extent that the district court dismissed those allegations of Watts' complaint concerning the warrantless "seizure" of the conversations between Watts and "Suzie" and any effect that may have on subsequently obtained warrants, dismissal was properly granted. The Supreme Court has clearly held in *United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), that the fourth amendment is not violated through the warrantless use of a radio transmitter concealed on the person of an informer with the informer's consent. In *White,* an informant recorded conversations with the defendant through the use of a concealed radio transmitter. At his trial for illegal transactions in narcotics, the defendant sought to exclude the testimony of the agents who had monitored the conversations on the basis that the conversations had been monitored and recorded without a prior warrant in violation of the fourth amendment. The district court admitted the testimony. After his conviction, the defendant appealed on this issue. The Court of Appeals overturned the defendant's conviction, finding that the defendant's fourth amendment rights had been violated by the warrantless electronic transmission of conversations to agents equipped with radio receivers and that, therefore, the testimony of the agents should have been excluded. The Supreme Court reversed the Court of Appeals and held that the fourth amendment does not bar from evidence "the testimony of governmental agents who related certain conversations which had occurred between [the] defendant ... and a government informant, ... which the agents overheard by monitoring [without a warrant] the frequency of a radio transmitter carried by [the informant] and concealed on his person." 401 U.S. at 746–47, 91 S.Ct. at 1123. Thus, *White* clearly holds that the interception of conversations between a confidential informant and a defendant, monitored without warrant, but which conversations were intercepted with the knowledge and consent of the confidential informant, does not violate the defendant's fourth amendment right to be secure against unreasonable searches and seizures. Therefore, the warrantless interception of Watts' conversations with "Suzie" does not state a claim under section 1983 for a violation of Watts' fourth amendment rights. Because the interception of the conversations is not violative of the fourth amendment, neither can it serve to taint the subsequently obtained warrants and evidence. The district court properly dismissed these allegations of Watts' complaint.

■ However, the district court reads Watts' complaint too narrowly. Watts argues to this court on appeal that the gravamen of his complaint "is that defendants had no authority, search warrant or otherwise, to search [Watts'] safety deposit boxes ...." Appellant's Supplemental Brief at 1. Reading Watts' *pro se* complaint liberally, as we must on an appeal from a dismissal for failure to state a claim, *Bruce v. Wade,* 537 F.2d 850 (5th Cir.1976), we think that Watts' complaint is fairly read to state such an allegation. By alleging a warrantless search by state law enforcement officers of his safety deposit boxes, Watts has sufficiently alleged a violation of his fourth amendment right (made applicable to the States through the fourteenth amendment)

to be secure in his person, house, papers, and effects against unreasonable searches and seizures and, therefore, has sufficiently alleged a section 1983 violation. The district court erred in dismissing Watts' entire complaint insofar as this allegation, unrecognized by the district court, was dismissed.

## Defendant Rowe

█ Nevertheless, the district court's dismissal of the entire complaint was proper as to defendant Rowe. Even if the grounds relied upon by the district court are found to be erroneous, we may affirm the district court's decision on any ground urged below, regardless of whether it was relied on by the district court. *Southern Natural Gas Co. v. Pontchartrain Materials, Inc.,* 711 F.2d 1251 (5th Cir.1983); *Bickford v. International Speedway Corp.,* 654 F.2d 1028 (5th Cir.1981). Among the grounds for dismissal urged by defendant Rowe was absolute judicial immunity. It is well settled that judicial officers are immune from liability for damages occasioned by their activities in the course and scope of their judicial function. *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967). Watts has brought this action against Rowe "by virtue of his issuance of warrants to search [Watts'] home." Complaint at 4. The issuance of warrants is clearly within the course and scope of Rowe's judicial function and he is therefore immune from any damage action occasioned thereby. Thus, dismissal of Watts' complaint against Rowe is affirmed.

## Collateral Estoppel

The remainder of the defendants urge that the dismissal of Watts' complaint in its entirety can be affirmed on the ground that Watts is precluded from raising any fourth amendment violations by virtue of his guilty plea in state court. Defendants argue that a plea of guilty is a waiver of all nonjurisdictional defects in the proceedings prior to the entry of the plea of guilty, precluding review either by appeal or other post-conviction remedy, *see State v. McKinney,* 406 So.2d 160 (La.1981); *State v. Cros-*

*by,* 338 So.2d 584 (La.1976), and that, therefore, the doctrine of collateral estoppel prevents Watts from bringing this section 1983 action based upon matters determined in the prior criminal proceeding.

We believe that the Supreme Court's decision in *Haring v. Prosise,* —— U.S. ——, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983), dictates a different result. In *Haring,* the plaintiff pled guilty in a Virginia state court to manufacturing a controlled substance. He later brought a section 1983 action against police officers who participated in an alleged warrantless search of his apartment. The district court granted summary judgment for the defendants on the ground that the plaintiff's guilty plea barred his section 1983 claim. The Court of Appeals reversed and remanded for further proceedings. The Supreme Court granted certiorari to resolve the uncertainty concerning the impact of a guilty plea upon a later suit under section 1983. The defendants first argued, as the defendants do here, that under principles of collateral estoppel, the plaintiff's conviction would bar his subsequent civil challenge to police conduct, and that a federal court must therefore give the state judgment the same effect under 28 U.S.C. § 1738, which generally requires federal courts to give preclusive effect to state court judgments if the courts of the state from which the judgments emerged would do so. The Court noted that the threshold question to be determined is whether, under the rules of collateral estoppel applied by the state courts, the judgment of conviction based upon a guilty plea would foreclose a later civil action challenging the legality of a search which had produced inculpatory evidence. The Court found that collateral estoppel, as applied by Virginia courts, operates only as to those matters in issue upon the determination of which the finding or verdict was entered. Because the legality of the search was never actually litigated in the state proceeding and because a determination of legality of the search was not necessary to acceptance of the guilty plea, the Court held that the doctrine of collateral estoppel

would not be invoked by the Virginia courts to bar the civil claim.

The defendants in *Haring* next argued that the plaintiff should be barred from litigating an issue that was never raised, argued, or decided, because he had an opportunity to raise the issue in a previous proceeding. The defendants argued, in effect, that the plaintiff's fourth amendment claims had been waived, relying upon prior Supreme Court decisions holding that a guilty plea is a waiver of constitutional trial rights and thus bars habeas review of claims relating to the deprivation of constitutional rights that occurred before the defendant's guilty plea. *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). The Court rejected this argument on several grounds. First, the Court found that fourth amendment claims are not among the trial rights that a criminal defendant necessarily waives when he pleads guilty. The Court explained that its decisions disallowing litigation of fourth amendment claims in habeas proceedings following a guilty plea, *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (per curiam), were based, not on a waiver of that right, but on the fact that the validity of the conviction cannot be affected by an alleged fourth amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized; a guilty plea is "a break in the chain of events [that] preceeded it in the criminal process." *Tollett v. Henderson,* 411 U.S. at 267, 93 S.Ct. at 1608. More importantly, the Court found that such a rule of preclusion would threaten important interests in preserving federal courts as an available forum for the vindication of constitutional rights.

> Under petitioners' rule, whether or not a state judgment would be accorded preclusive effect by state courts, a federal court would be barred from entertaining a § 1983 claim. The rule would require "an otherwise unwilling party to try [Fourth Amendment] questions to the hilt" and prevail in state court "in order

to [preserve] the mere possibility" of later bringing a § 1983 claim in federal court. 103 S.Ct. at 2378 (citations omitted). The Court concluded that the section 1983 plaintiff's prior guilty plea did not preclude him from seeking damages in a civil rights action for an alleged fourth amendment violation that was never considered in the state proceedings.

■ Applying the analysis of *Haring,* we find that Watts' guilty plea does not preclude the present action. As the Court pointed out in *Haring,* the threshold question is whether, under the rules of collateral estoppel applied by the Louisiana courts, the judgment of conviction based upon Watts' guilty plea would foreclose him in a later civil action from challenging the legality of a search which had produced inculpatory evidence. Defendants' counsel in this case have complicated our resolution of this issue by couching their argument in terms of "collateral estoppel," which does not exist in Louisiana jurisprudence. *Welch v. Crown Zellerbach Corp.,* 359 So.2d 154 (La. 1978) (collateral estoppel or issue preclusion does not exist in Louisiana law). Louisiana law, however, does recognize a limited version of res judicata, to which this argument is more properly addressed. La.Civ.Code Ann. art. 2286 (West 1952).

The Louisiana doctrine of res judicata is a presumption of correctness which "dispenses with all other proof, in favor of [the] party for whom it exists." Civilian res judicata applies only to matters actually submitted for decision by the parties and actually decided by the court. It further demands the existence of three "identities" between the previous and subsequent suits: the thing demanded (relief) in the suits must be the same; the demands must be founded on the same cause; and the demands must be between the same parties. *See generally* Comment, *Litigation Preclusion in Louisiana:* Welch v. Crown Zellerbach Corporation and the Death of Collateral Estoppel, 53 Tul.L.Rev. 895 (1979).

Clearly, the doctrine of res judicata would not be invoked in this case by the

Louisiana courts. The matter of the alleged fourth amendment violation was not actually submitted for decision to the state court. Neither was it actually decided by the state court. Moreover, the requisite identities of parties and relief are not present. This case would simply not meet the requirements for application of res judicata under Louisiana law.

The defendants also argue that Louisiana courts would preclude Watts from bringing a civil action challenging the legality of the search of his safety deposit boxes because by pleading guilty he waived his right to challenge any antecedent constitutional violations and that we must give Watts' conviction upon that guilty plea the same preclusive effect as would the Louisiana courts under 28 U.S.C. § 1738. This argument, while facially similar to the waiver argument raised in *Haring*, is presented in a somewhat different posture. The defendants in *Haring* were asking a federal court to adopt such a rule of preclusion; the defendants here argue that the state courts have such a rule of preclusion to which we must give effect. The defendants correctly argue that, if the Louisiana courts would give Watts' conviction preclusive effect, so must we. 28 U.S.C. § 1738 (1976).

■ However, the cases cited by defendants do not show that Louisiana courts would give Watts' conviction, based upon his guilty plea, the preclusive effect that defendants claim. The cases cited by the defendants, *State v. McKinney*, 406 So.2d 160 (La.1981), and *State v. Crosby*, 338 So.2d 584 (La.1976), hold that a plea of guilty is a waiver of all non-jurisdictional defects in the proceedings prior to the entry of the guilty plea, and precludes review either by appeal or other post-conviction remedies. The critical distinction between these cases and the present case is that the cases cited by the defendants involve challenges to convictions and not civil actions for damages. The rule of law relied upon by the defendants had its origin in Louisiana in *State v. Valentine*, 259 La. 1019, 254 So.2d 450 (1971). The *Valentine* court, in adopting this rule, quoted from our opinion

in *Colson v. Smith*, 438 F.2d 1075, 1079 (5th Cir.1971): "We subscribe fully to the principle that guilty pleas are meant to be, and should be final." 254 So.2d at 451. Thus, the principle underlying this rule does not support its application to a civil action for damages. The court was concerned only with challenges to the guilty plea and convictions based thereon, and not with civil actions for damages which in no way impact upon the finality of the guilty plea. These cases, all of which involve challenges to convictions, simply do not support a construction that a guilty plea waives a criminal defendant's right to bring a civil action alleging violations of his fourth amendment rights. While we feel that a clear reading of the cases cited by the defendants supports this result alone, we also note that we are extremely reluctant, absent a definitive statement by the Louisiana courts, to give these cases the construction urged by the defendants because of the policy relied on in *Haring* that such a rule of preclusion would require a party to litigate fourth amendment questions "to the hilt" and prevail in state court in order to preserve the mere possibility of later bringing a section 1983 claim. Therefore, we do not find that Louisiana courts would preclude Watts from bringing a civil action challenging the legality of the search of his safety deposit boxes on the basis of his prior guilty plea.

Finally, to the extent that the defendants' waiver argument urges us to adopt a federal rule that a plea of guilty waives a criminal defendant's rights to bring later a section 1983 action for an alleged fourth amendment violation that was never considered in the state proceedings, we refuse to do so on the basis of the Supreme Court's holding in *Haring v. Prosise, supra.* Accordingly, we find that Watts is not precluded from raising any fourth amendment violations in a section 1983 action by virtue of his guilty plea in state court.

*Statute of Limitations*

■ The defendants argue further that the district court's dismissal can be affirmed on the ground that Watts' claims are precluded by the running of the applica-

ble prescriptive period. The statute of limitations may serve as a proper ground for dismissal under Federal Rule of Civil Procedure 12(b)(6), *Cross v. Lucius,* 713 F.2d 153, 156 (5th Cir.1983), but only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Abdul-Alim Amin v. Universal Life Insurance Co.,* 706 F.2d 638, 640 (5th Cir.1983). Because section 1983 contains no limitation provision, we look to analogous state statutes to determine whether the action is time-barred, as long as application of the statute is not inconsistent with federal policies. *Cross v. Lucius,* 713 F.2d at 156. However, the question of when a federal cause of action accrues is a matter of federal, not state, law. *Lavellee v. Listi,* 611 F.2d 1129 (5th Cir.1980).

It is well established in decisions in this circuit that wrongs committed by Louisiana state officials in violation of federal law are considered to be torts subject to Louisiana's one-year statute of limitations for tort actions, La.Civ.Code Ann. art. 3536 (West 1961). *Jones v. Orleans Parish School Board,* 688 F.2d 342, 344 (5th Cir. 1982) (upon rehearing); *Lavellee v. Listi,* 611 F.2d 1129 (5th Cir.1980); *Proctor v. Flex,* 567 F.2d 635 (5th Cir.1978). A section 1983 action accrues and the statute of limitations begins to run when the "plaintiff knows or has reason to know of the injury which is the basis of the action." *Lavellee v. Listi,* 611 F.2d at 1131 (5th Cir.1980); *Cox v. Stanton,* 529 F.2d 47, 50 (4th Cir. 1975). Stated differently, "[u]ntil the plaintiff is in possession of the 'critical facts' that he has been hurt and who has inflicted the injury, the statute of limitations does not commence to run." *Lavellee,* 611 F.2d at 1131 (quoting *United States v. Kubrick,* 444 U.S. 111, 122, 100 S.Ct. 352, 359, 62 L.Ed.2d 259 (1979)).

The question of when Watts' cause of action accrued and thus, when the statute of limitations expired presents issues making the determination of this question on a Rule 12(b)(6) motion inappropriate in this case.

Therefore, the judgment of the district court is AFFIRMED IN PART and REVERSED AND REMANDED IN PART.