UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-30504

_____


CHARLES ALBRIGHT, III, ET AL.,

Plaintiffs,

CHARLES ALBRIGHT, III, ET AL.,

Plaintiffs-Appellants-Cross-Appellees,

v.

THE CITY OF NEW ORLEANS, ET AL.,

Defendants,

THE CITY OF NEW ORLEANS,

Defendant-Appellee-Cross-Appellant.

_____

BARRY FLETCHER, ET AL.,

Plaintiffs,

BARRY FLETCHER, ET AL.,

Plaintiffs-Appellants,

v.

THE CITY OF NEW ORLEANS, ET AL.,

Defendants-Appellees.

_____


SAMUEL BUA, ET AL.,

Plaintiffs-Appellants-Cross-Appellees,

MICHAEL GLASSER, ET AL.,

                              Plaintiffs-Appellants,

                    v.

          THE CITY OF NEW ORLEANS

                    Defendant-Appellant-Cross-Appellee,

RICHARD PENNINGTON, individually and in his capacity as Chief of
Police, MARLIN GUSMAN, individually and in his official capacity
          as Chief Administrative Officer,

                              Defendants-Appellees.

_____

                    PAUL H. BOLIAN,

                              Plaintiff-Appellant,

                    v.

          THE CITY OF NEW ORLEANS,

                    Defendant-Appellant-Cross-Appellee,

  MARC H. MORIAL, individually and in his official capacity as
     Mayor of the City of New Orleans, RICHARD PENNINGTON,
individually and in his official capacity as Superintendent of
Police for the City of New Orleans, MARLIN GUSMAN, individually
and in his official capacity as Chief Administrative Officer of
               the City of New Orleans,

                              Defendants-Appellees.

          _____

          Appeals from the United States District Court
             for the Eastern District of Louisiana
                       (96-CV-679-J)
          _____
                      November 1, 2000

                           -2-

Before WOOD[*], DAVIS, and BARKSDALE, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:[**]

In this consolidated proceeding, several groups of white New Orleans police officers asserted various discrimination claims against the City of New Orleans (the "City") predicated on race. The district court resolved a number of claims on motion and tried the remaining claims. The City prevailed on the issues that were tried. The officers challenge several of the pre-trial rulings. Our disposition of these challenges follows.

I.

Each time the City seeks to promote its police officers in rank, it administers an examination and uses the results of that examination to establish a register from which promotions are made. According to the rules of the New Orleans Civil Service Commission (the "Commission"), each register must stay in force for at least one year, and may then be extended for two more years at the discretion of the Director of the Commission, and then for two more years at the discretion of the full Commission. See Rules 5.2 and 5.3 of the Civil Service Commission of the City of New Orleans.

The promotions practices of the City are further governed by

_____

[*]Circuit Judge of the Seventh Circuit, sitting by designation.

[**]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

-3-

the terms of a consent decree and a related stipulation entered in the case of Williams v. City of New Orleans, No. 73-629 (E.D. La. May 26, 1987). The consent decree, entered to remedy the discrimination claims of black police officers, requires that the City group candidates for promotion in rank into different bands on the promotions register based on their results on the qualifying examination. All officers in the same band are deemed to be of equal ability, and the City must promote all the members of a given band before promoting members of a lower band. The only exception to this rule is that the City was required to create a number of additional, or supernumerary, positions at each level of rank to be filled by black officers without regard to where those officers might fit in the band system.

White police officers intervened in the Williams case, concerned that the promotion scheme described above would limit their chances for promotion. In response to those concerns a stipulation was added to the consent decree that required the City to maintain a fixed ratio of officers of a given rank to the total number of officers on the force, the ratio to be calculated without inclusion of the additional black officers to be promoted under the terms of the consent decree. In particular, the City must maintain a ratio of lieutenants to the total force of 4.9%. The stipulation allows a variance from the various required percentages for a period of up to nine months. The consent decree and related stipulation lapse upon the expiration of the second promotions

-4-

register created under their terms.

The City established its second promotions register for lieutenants in May of 1994. It made its first set of promotions from the register in March of 1995. At that time, it promoted all the members of the first three bands, plus five members of the fourth band. All of the sergeants promoted from the fourth band were black. None of the 27 white sergeants in the fourth band were promoted in May of 1995. Three subsequent rounds of promotions were made in 1995 and 1997, all of white officers. Over the same time, a number of black officers were appointed to supernumerary positions. As of October 22, 1997, 21 white officers were left in the fourth band and 42 white and 7 black officers were left in the fifth band. Over the same time period, the City began to fall behind in maintaining the required ratio of lieutenants to the total force. It first fell behind on April 8, 1997, and by November 3, 1997, it was 18 lieutenants below the required 4.9%. According to the terms of the stipulation, it would need to appoint additional lieutenants (at least 18 as long as the size of the force as a whole stayed constant) by January 8, 1998, which was the end of the nine month grace period allowed by the stipulation. The natural result of the City's actions was thus to require the quick promotion of an exclusively white group of sergeants before the end of 1997.

The stipulation's requirements would only bind the City so long as the second promotions register was in effect. The register

had been set to expire on August 31, 1997. The Commission chose to extend the life of the register for six months at a meeting on August 14, 1997. However, the Commission voted on November 20, 1997 to rescind the extension of the promotions register that it had ordered on August 14.

II.

This appeal consolidates four actions, each of which touches on some part of the promotions practices described above. The cases, and the claims each raises, are as follows.

Barry Fletcher, et al. v. The City of New Orleans, et al. was filed in August of 1997 by five white sergeants (together, the "Fletcher plaintiffs") each of whom was on the second lieutenants promotions register, in either band four or band five, and were still awaiting promotion to lieutenant. They alleged that the City was working, starting in May of 1997, to secure expiration of the second lieutenants promotions register. They alleged that the City was doing so in violation of 42 U.S.C. § 1983 in that the City was seeking to avoid promoting white sergeants to lieutenant. The Fletcher plaintiffs later amended their complaint to add a charge that the City was in violation of the stipulation to the Williams consent decree in falling below the required ratio of lieutenants to the total force.

Charles Albright, III, et al. v. The City of New Orleans, et al. was filed in February of 1996 by 34 white patrol officers and sergeants (together, the "Albright plaintiffs"). They alleged that

-6-

a City ordinance which made residence in Orleans Parish a precondition for promotion was unlawful in several respects. They alleged that the ordinance had a racially discriminatory disparate impact on white police officers, that the ordinance was not properly validated before going into effect, that the City had discriminated against four female police officers on the basis of their sex, and that the City retaliated against the plaintiffs for filing complaints with the Equal Employment Opportunity Commission after the first round of promotions in March of 1995. Each of these claims was either dismissed or tried to an adverse judgment and they are not at issue in this appeal. However, the Albright plaintiffs, as a result of discovery on their original claims, amended their complaint in September of 1998 to add theories of intentional racial discrimination under 42 U.S.C. § 1983 and other similar state and federal laws. Their amendment alleged that the promotions decisions in March of 1995 were not only tainted by the domicile ordinance, but also by the intentional choice of the City to discriminate against the Albright plaintiffs on the basis of their race.

Samuel Bua, et al. v. The City of New Orleans, et al. was filed in December of 1997 by 37 white sergeants (together, the "Bua plaintiffs"), each of whom was on the second lieutenants promotions register, in either band four or band five, and was still awaiting promotion to lieutenant. Seven of the Bua plaintiffs were also Albright plaintiffs. The Bua plaintiffs alleged that the City was

in violation of the stipulation to the <u>Williams</u> consent decree in falling below the required ratio of lieutenants to the total force, which was the same claim as the amendment to the complaint of the Fletcher plaintiffs. The Bua plaintiffs later amended their complaint in the same manner as was done by the Albright plaintiffs; the Bua plaintiffs now alleged that they had suffered intentional racial discrimination in the promotions decisions the City made in March of 1995.

Paul Bolian v. The City of New Orleans, et al. was filed in October of 1998 by a white patrolman alleging disparate impact racial discrimination arising from the City's residence ordinance as well as intentional discrimination by the City against him on account of his race. His complaint, in effect, alleged the disparate impact theory of the Albright plaintiffs' original complaint as well as the intentional discrimination theory of the Albright plaintiffs' proposed amendment.

Following the decision of the Commission on November 20, 1997 to rescind its previous extension of the second lieutenants promotions register the Fletcher plaintiffs sought, and the district court granted, a temporary restraining order preventing the expiration of the second lieutenants promotions register. The order was continued indefinitely, with the consent of all the parties, until a resolution of the consolidated cases on the merits.

The district court disposed of the issues raised in this

appeal as follows. It granted summary judgment to the City and the other defendants on the intentional discrimination claims of the Fletcher, Bua, and Albright plaintiffs on the grounds that those claims were time barred. The district court ruled that the Fletcher plaintiffs and the Bua plaintiffs should have known in March of 1995, when the City promoted only black officers to lieutenant out of band four, that they were being discriminated against because of their race. Because the applicable prescriptive period for their claims is one year, the district court ruled that their suits, filed in August of 1997 and September of 1998 (which was the date of the amendment by the Bua plaintiffs), were untimely.

As to the intentional discrimination claims of the Albright plaintiffs, who alleged intentional discrimination in promotions decisions made in March of 1995, the district court ruled that those claims were time barred. The district court ruled, without further explanation, that the claims in the amendment the Albright plaintiffs made in September of 1998 did not relate back to the timely filed original complaint of February of 1996. Finally, the district court ruled that the City had not violated the stipulation to the Williams consent decree, which had been alleged by both the Fletcher and Bua plaintiffs. The district court ruled that nothing in the rules of the Commission prevented the Commission from rescinding an extension of a promotions register. As such, there were no grounds for issuing the temporary restraining order, which

was the only thing keeping alive the allegations of the Fletcher and Bua plaintiffs. The district court thus ruled that the second lieutenants promotions register lapsed as of November 20, 1997 at the latest and that the City never violated the stipulation to the consent decree.

## III.

The above description of the somewhat confused factual and procedural background in this case allows us to resolve this appeal in a straightforward manner. We turn first to the district court's ruling that the Fletcher and Bua plaintiff's discrimination claims are time barred.

## A.

We review the district court's decision to grant summary judgment de novo. Gardes Directional Drilling v. U.S. Turnkey Exploration Co., 98 F.3d 860, 864 (5th Cir. 1996). While the length of the prescriptive period for claims under § 1983 is determined by reference to analogous state law[1], when the prescriptive period begins to run is a matter of federal law. The prescriptive period begins to run, "when the 'plaintiff knows or has reason to know of the injury which is the basis of the action.' Stated differently, '[u]ntil the plaintiff is in possession of the 'critical facts' that he has been hurt and who has inflicted the injury, the statute of limitations does not commence to run.'"

---

[1]Louisiana law provides a one year prescriptive period for § 1983 claims. Watts v. Graves, 720 F.2d 1416, 1423 (5th Cir. 1983).

-10-

Watts v. Graves, 720 F.2d 1416, 1423 (5th Cir. 1983) (internal citations omitted).

The first step in analyzing whether the statute of limitations serves to bar an action is understanding the nature of the injury of which the plaintiff complains. The Fletcher plaintiffs, in their original 1997 complaint, complained that they were injured by the City's actions in seeking expiration of the second lieutenants promotions register in the summer and fall of 1997. They did not complain about the actions of the City in making the first round of promotions to lieutenant in March of 1995. Indeed, they could not complain of those promotions decisions because some of their number were in band five of the promotions register and so could not have been promoted in March of 1995, when the City reached only as low as band four in promoting new lieutenants.

Having clarified the nature of the Fletcher plaintiffs complaint, the error of the district court is clear. The Fletcher plaintiffs do not complain of discrimination arising from the March, 1995 promotions decisions. If they were, the district court would have been correct in concluding that the injury, which occurred in March of 1995, was too far removed in time from the filing of the lawsuit in August of 1997. However, the Fletcher plaintiffs complain of an injury caused by the City sometime during

the summer of 1997.[2]  That is when the clock began to run on the one year prescriptive period.  Because the Fletcher plaintiffs filed suit in August of 1997, well within one year from the date the alleged discriminatory acts occurred, the district court erred in granting summary judgment on this issue.

For the same reasons that the district court erred in granting summary judgment to the City on the Fletcher plaintiffs' intentional discrimination claims, it was correct to grant summary judgment on the intentional discrimination claims of the Bua plaintiffs.  They complained of discrimination that occurred in March of 1995.  However, the Bua plaintiffs did not file their complaint until December of 1997.  This was well past one year after the alleged discriminatory acts occurred.  So even if the Bua plaintiffs' amended complaint, which was filed in September of 1998 and which first raised claims of intentional discrimination, were considered to relate back to their original complaint, the claims would have been time barred.  Therefore, the district court was correct to grant summary judgment to the City on the intentional discrimination claims of the Bua plaintiffs.

## B.

We turn next to the decision of the district court that the intentional discrimination claims of the Albright plaintiffs are

---

[2]Whether the City's actions in seeking termination of the second lieutenants promotions register were discriminatory or simply a result of a change in police tactics is a matter for further proceedings in the district court.

time barred.  Like the decisions discussed in section III.A. above, we review this decision de novo.  The intentional discrimination claims of the Albright plaintiffs, which concern the City's promotions decisions of March of 1995, were first alleged in the amendment the Albright plaintiffs made to their original complaint in September of 1998.  The amendment was filed well after one year after the alleged discriminatory acts occurred.  Thus, the intentional discrimination claims of the Albright plaintiffs can only be considered timely made if they relate back to the claims contained in the original complaint of the Albright plaintiffs, which was filed only eleven months after the alleged discriminatory acts, in February of 1996.  Thus, we must review the decision of the district court that the Albright plaintiff's amended complaint did not relate back to their original complaint.

Federal Rule of Civil Procedure 15(c)(2) allows relation back of amended complaints when, "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."

The Albright plaintiffs' original complaint alleged that the promotions decisions the City made in March of 1995 were discriminatory because of the residence ordinance which prevented them from being promoted.  In particular, they alleged that the residence ordinance which guided the March of 1995 promotions decisions was racially discriminatory because it had an adverse

impact on them. Their amended complaint added a claim that the decisions the City made in March of 1995 were also biased in that City officials actively sought to discriminate against them on the basis of their race. Whatever the truth of either claim, each is based on the same transaction or occurrence, namely the promotions decisions the City made in March of 1995. The Albright plaintiffs, in effect, simply sought to prove discrimination against them in the March of 1995 promotions by other means. Their original complaint sought to prove discrimination by looking to the adverse impact of the residence ordinance. The amended complaint sought to prove the same discrimination by looking to direct evidence of the intent of high-ranking members of the City's police force. Though the theories of proof are different, both the original and the amended complaint concern alleged discrimination in the March of 1995 promotions decisions. We conclude, therefore, that the claims the Albright plaintiffs sought to allege clearly related back, in both time and subject matter, to the claims presented in their original complaint. The district court erred in granting summary judgment on the intentional discrimination claims of the Albright plaintiffs.

C.

We turn next to the claim of the Fletcher and Bua plaintiffs that the City violated the stipulation to the <u>Williams</u> consent decree. The district court decided that the temporary restraining order that it had previously entered to prevent expiration of the

-14-

second lieutenants promotions register had been improvidently granted and that the City had never been in violation of the consent decree. Whether that decision was correct presents, in this case, a question of law that we review de novo. Randel v. United States Dept. of Navy, 157 F.3d 392, 395 (5th Cir. 1998).

The district court first entered its temporary restraining order preventing expiration of the second lieutenants promotions register on November 20, 1997, the same day the Commission decided to rescind its previous extension of that register. All of the parties later agreed to leave the temporary restraining order in place pending a resolution of the merits of the claim made by the Fletcher and Bua plaintiffs. When the district court reached the merits of this claim, it recognized that the temporary restraining order should only have been entered if the Fletcher and Bua plaintiffs could complain that the Commission had no power to rescind its previous extension of the promotions register. The district court decided that the Commission was acting within its authority, and so decided that the temporary restraining order had been improvidently granted. It then decided that as the Commission had been acting properly, the second lieutenants promotions register had expired in November of 1997. As this was before the expiration of the nine month grace period (which had begun to run in April of 1997 when the City first fell behind in maintaining the required number of lieutenants), the district court ruled that the City never violated the stipulation to the Williams consent decree.

-15-

The Fletcher and Bua plaintiffs now argue that the district court erred in dissolving the temporary restraining order and that the City was in fact in violation of the stipulation to the <u>Williams</u> consent decree.

We agree with the district court that the Commission was acting within its authority when it voted to rescind the extension of the second lieutenants promotions register. The rules of the Commission provide both the director and the full Commission with considerable discretion to extend the life of promotions registers. Although the rules of the Commission are silent on its power to rescind a register, we see no reason to deny the Commission the discretion to rescind extensions of promotions registers in light of the plenary powers the rules grant it to extend the life of registers. The Fletcher and Bua plaintiffs point to no authority that would support a contrary conclusion. The district court was correct to dissolve the temporary restraining order as improvidently granted.

The Fletcher and Bua plaintiffs also argue that the City was in violation of the stipulation to the <u>Williams</u> consent decree as soon as it fell behind the 4.9% threshold in April of 1997. They argue that the language of the stipulation only allows the City to be out of compliance during the nine month grace period in certain enumerated situations. This argument simply misreads the language

of the stipulation.[3]  The reasons given in the stipulation for how the city might be out of compliance are merely illustrative and not exclusive, as the Fletcher and Bua plaintiffs contend.  The language of the stipulation allows the City to be out of compliance for any reason so long as it cures that problem within nine months. The City failed to comply with the 4.9% requirement beginning in April of 1997.  The nine month grace period had not expired in November of 1997 when the second lieutenants promotions register was rescinded.  The district court correctly ruled that the City never violated the stipulation to the <u>Williams</u> consent decree.

D.

Finally, we come to the claims made by Paul Bolian.  Though he filed a notice of appeal, and though his cause of action is mentioned in the joint brief of the Albright and Bua plaintiffs and he makes a conclusory prayer for relief in that brief, he presents no substantive arguments as to why the district court was incorrect to dismiss his claims.  Therefore, we must consider his appeal abandoned.

---

[3]The stipulation to the <u>Williams</u> consent decree provides that, "variance from the above percentages [i.e., the 4.9% requirement] lasting no longer than nine months, such as might result from hiring more police officers or from the promotion, termination, or retirement of one or more officers from the rank involved, shall not constitute a violation of this stipulation."  Quoted in <u>Albright v. City of New Orleans</u>, No. 96-0679 (E.D. La. April 14, 1999) (opinion of the court).

IV.

For the reasons stated above: 1) we REVERSE the district court's grant of summary judgment dismissing the intentional discrimination claims of the Fletcher plaintiffs as time barred and REMAND these claims to the district court for further proceedings; 2) we REVERSE the district court's grant of summary judgment dismissing the intentional discrimination claims of the Albright plaintiffs as time barred and REMAND these claims to the district court for further proceedings; and 3) we AFFIRM the remaining orders challenged on appeal, including the district court's order dismissing the Bua plaintiff's intentional discrimination claims, the district court's order vacating the temporary restraining order, which had required the City to maintain the second lieutenants promotions register, and the district court's order dismissing the claims of Paul Bolian.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.