United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 21, 2003**

Charles R. Fulbruge III
Clerk

Revised August 4, 2003

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-50097

_____

ISAIAH RUSSELL JONES; ROBERT SPARKS, JR.;
HERMAN PARKS, JR.,

Plaintiffs-Appellants,

versus

ALCOA, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas

_____

Before GARWOOD, JONES and STEWART, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiffs Isaiah Russell Jones (Jones), Robert Sparks Jr. (Sparks), and Herman Parks Jr. (Parks) filed this lawsuit October 4, 2002, against defendant Alcoa, Inc. (Alcoa), a Pennsylvania corporation, alleging that Alcoa discriminated against them on the basis of race, in violation of 42 U.S.C. § 1981, by assigning them to work in areas of Alcoa's Milam County, Texas, plant where they were exposed to dangerous amounts of asbestos dust. The district

court granted Alcoa's Rule 12(b)(6) motion to dismiss, finding that the plaintiffs' claims were time barred. We agree with the district court, and for the reasons set forth below, we affirm.

## I. Background

The plaintiffs, all African-Americans and citizens of Texas, began working at Alcoa's Rockdale plant in Milam County, Texas, between 1953 and 1970. According to the plaintiffs, beginning in the early 1950s and continuing until 1970,[1] Alcoa intentionally discriminated against them and other African-American employees by assigning them to work exclusively in the potlining department, the rod room, and the carbon plant, areas of Alcoa's Rockdale plant where employees were regularly exposed to large quantities of asbestos dust. In addition, the plaintiffs alleged that Alcoa engaged in other racially discriminatory acts, including denying them access to dining and restroom facilities reserved for white employees, denying them transfers out of the three above-mentioned departments of the plant, and refusing to promote them to higher-paying or supervisory positions.

Recently, all three of the plaintiffs have begun to develop lung disorders, disorders that they attribute to exposure to asbestos dust while assigned to the rod room, carbon plant, and potlining department at the Rockdale plant. The plaintiffs' suit was filed in state court in Milam County, Texas, to recover for

---

[1] The plaintiffs concede that any complained of discrimination had ended by 1970.

2

their injuries, and Alcoa removed the suit to the district court below on the basis of diversity and federal question jurisdiction.[2] Thereupon, Alcoa moved to dismiss the plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that the plaintiffs' section 1981 claim was barred by the two-year statute of limitations provided under Texas law for personal injury actions. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (Vernon 2002). The district court, applying the discovery rule and concluding that the plaintiffs' cause of action did not arise until they became aware of their lung disorders, initially disagreed and denied the defendant's motion. Upon reconsideration, however, the district court found that the plaintiffs' claim was governed by the Supreme Court's decision in *Delaware State College v. Ricks*, 101 S.Ct. 498 (1980), that the discovery rule, therefore, did not operate to toll the statute of limitations, and that the plaintiffs' section 1981 claim was, in fact, time-barred. The court granted the defendant's motion to dismiss and the plaintiffs now appeal.

## II.

We review *de novo* a district court's grant of a motion to dismiss for failure to state a claim, *see Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 488 (5th Cir, 2002), taking the

---

[2] Although the plaintiffs' theory of recovery in their original complaint was somewhat unclear, their amended complaints reflect that the plaintiffs pursued recovery for racial discrimination under 42 U.S.C. § 1981.

3

actual allegations of the complaint as true, and resolving "any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (1993). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id. See also Taylor v. Books A Million*, 296 F.3d 376, 378 (5th Cir. 2002).

As a threshold matter, we note that the discriminatory acts complained of long antedate the 1991 amendments to section 1981. It is therefore highly doubtful that the plaintiffs even present a claim cognizable under the then extant version of section 1981. The plaintiffs' allegations appear to challenge discriminatory terms and conditions of their employment with Alcoa. Under *Patterson v. McLean Credit Union*, 109 S.Ct. 2363 (1989), however, the pre-November 1991 version of section 1981 relevant to the plaintiffs' complaint "covers only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process," not conduct that occurs after contract formation and that affects only the benefits, privileges, terms, and conditions of employment. *See Felton v. Polles*, 315 F.3d 470, 483 (5th Cir. 2002). Although section 1981 has since been amended to "'legislatively reverse[ ]' *Patterson*," we have repeatedly held that that "amendment 'is *not* to be given retroactive effect.'" *Id.* at 484 (quoting *Nat'l Ass'n of Gov't*

4

*Employees*, 40 F.3d 698, 713 (5th Cir. 1994)).[3]

The plaintiffs do allege in their complaint that their assignment to the pot lining department, the carbon plant, and the rod room was a term required in the formation of their contract with Alcoa, and therefore actionable under section 1981. And, it is true that this court, for purposes of a motion to dismiss, will generally accept the "pleader's description of what happened to him along with any conclusions that can reasonably be drawn therefrom." 5A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1990). The plaintiffs' allegation, however, is devoid of detail, let alone any factual basis to support the conclusion that assignment to the three areas in question was, in fact, a term implied in the plaintiffs' initial employment contract and not a subsequent term or condition of employment at the Rockdale plant. Even for purposes of a motion to dismiss however we need not accept such conclusory statements,[4] particularly where they concern the

---

[3] The well-settled rule in this circuit that the 1991 amendments to § 1981 are not to be given retroactive effect forecloses the plaintiffs' argument, advanced in their second amended complaint and in their brief, that the pre-1991 version of § 1981 prohibited not only discrimination in formation of employment contracts, but also in the terms and conditions of employment contracts, and that the 1991 amendments, rather than overturning *Patterson*, merely clarified the original intent of § 1981. *See Nat'l Ass'n of Gov't Employees*, 40 F.3d at 713.

[4] *See Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994) (accepting as true, for the purposes of a Rule 12(b)(6) dismissal, well-pleaded factual allegations, but rejecting "conclusory allegations or unwarranted deductions of fact."); *Associated Builders v. Alabama Power Co.*, 505 F.2d 97,

legal effect of an allegation[5] or involve a question of law normally reserved for the court, such as the interpretation of an implied term in an employment contract.[6] Moreover, the plaintiffs' efforts, discussed below, to define their injury as the discriminatory exposure to asbestos and the denial of promotions out of certain departments tends to undermine the claim that the challenged discrimination occurred only in connection with the formation of their employment contracts as required by *Patterson*. There is a substantial question, therefore, whether, even apart from the limitations issue, the plaintiffs allege a claim cognizable under section 1981.[7] *See, e.g.,* *Felton*, 315 F.3d at

---

100 (5th Cir. 1974) (same). *See also, e.g., Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992); *Taylor* at 378.

[5] *See* 5A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1990) ("[T]he court will not accept conclusory allegations concerning the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened, or if these allegations are contradicted by the description itself.").

[6] *See Mississippi Power Co. v. NLRB*, 284 F.3d 605, 619 n.39 (5th Cir. 2002) (noting that whether a contract is ambiguous and the interpretation of unambiguous contracts are questions of law); *Lee v. Hunt*, 631 F.2d 1171, 1180 (5th Cir. 1980) (same under Texas law).

[7] We note also that any claim of either discriminatory assignment or exposure is open to potentially serious challenge on the merits. Summary judgment evidence submitted by Alcoa indicates that white, as well as African-American workers at the Rockdale plant were exposed to asbestos. In fact, Alcoa's summary judgment evidence indicates that of 600 white employees, 264 were also initially assigned to work in one of the three areas in question, the rod room, carbon plant, or potlining department; of 161 black employees, 80 were initially assigned to

6

484–485 (holding that a claim of racial harassment, based on conduct occurring prior to the 21 November 1991 amendments, is not actionable under section 1981).  Nevertheless, because we hold that the plaintiffs' claim is time-barred, we need not resolve whether Alcoa's discriminatory assignment of the plaintiffs to the areas of the plant in question was a term implicit in the formation of their contracts and therefore actionable under section 1981, or whether that discriminatory assignment and subsequent asbestos exposure was merely a condition of employment not actionable under the pre-1991 version of section 1981.

III.

Assuming, *arguendo*, that the plaintiffs have alleged a claim cognizable under section 1981, our review focuses on the district court's conclusion that the plaintiffs' claim falls outside the relevant limitations period.

Federal civil rights actions brought under 42 U.S.C. § 1981, which lacks an express statute of limitations, are governed by the most closely analogous limitations period provided under state law.

---

one of the same three areas.  Alcoa's evidence does not, of course, establish the respective tenure, in these departments, of white and black employees who were initially assigned to the areas in question.  It might well not, therefore, suffice to rebut completely any charge of discriminatory exposure that might be cognizable under the amended § 1981.  Alcoa's unrebutted evidence does, however, at the least reveal potential serious problems with any claim that African-American employees were initially assigned in disproportionate numbers, as part of the formation of their contracts, to the rod room, carbon plant, and potlining departments.

*Johnson v. Railway Express Agency, Inc.*, 95 S.Ct. 1716, 1721 (1975); *White v. United Parcel Service*, 692 F.2d 1, 2 (5th Cir. 1982). Thus, where a section 1981 claim is brought in Texas, the two-year statute of limitations for personal injury actions in Texas controls. *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000); *Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1028 (5th Cir. 1988).

The parties agree that a section 1981 claim must be brought not later than two years after the cause of action accrues. Their dispute, rather, concerns the date on which the plaintiffs' claim against Alcoa accrued. The determination of that date is, in turn, a question of federal law. *See Perez v. Laredo Junior College*, 706 F.2d 731, 733 (5th Cir. 1983) ("Although state law governs the substantive limitation period, federal law determines when a civil rights action accrues and, therefore, when the statute of limitations begins to run."). Thus, we have held that "[t]he limitations period for [section] 1981 . . . employment discrimination cases commences when the plaintiff knows or reasonably should know that the [challenged] discriminatory act has occurred." *McWilliams v. Escambia County Sch. Bd.*, 658 F.2d 326, 330 (5th Cir. 1981).

Determining the crucial issue of when the plaintiffs knew, or reasonably should have known that Alcoa was engaged in impermissible racial discrimination so as to give rise to a cause

8

of action under section 1981, requires this court first to "identify precisely" the exact "unlawful employment practice of which [the plaintiffs] complain[ ]." *See Delaware State College*, 101 S.Ct. 498, 503 (1980); *Perez*, 706 F.2d at 733. Two competing definitions of the relevant discriminatory act, or unlawful employment practice, have been suggested by the parties: (1) the discriminatory denial of promotions and assignment of African-American workers to three specific areas of Alcoa's Rockdale Plant; and (2) the discriminatory exposure of African-American workers to asbestos dust. The plaintiffs advance the latter definition, maintaining that because Alcoa's discriminatory act was the exposure of its African-American employees to asbestos, they could not have been aware of Alcoa's discrimination until they began to experience the harmful physical effects of asbestos exposure, and that the statute of limitations was accordingly tolled.

We cannot, however, accept the plaintiffs' definition of the relevant discriminatory act, for the reason that the plaintiffs' definition, the latter and narrower of the two above-proposed definitions, is necessarily embraced by the former. Any discriminatory exposure of the plaintiffs to asbestos necessarily followed from any prior discriminatory assignment of African-American workers to the rod room, carbon plant, and potlining departments. There is little question that the greater physical harm to the plaintiffs arising from such discriminatory assignment

9

was the resulting exposure to asbestos dust and to the risk of asbestos-related disease, nor is there any question that had the plaintiffs simply pursued a claim for personal injury, they could probably not be charged with knowledge of that actual exposure until they discovered its consequences upon falling ill. *See, e.g.*, *Urie v. Thompson*, 69 S.Ct. 1018 (1949) (holding that an employee exposed to a toxic substance is injured for purposes of the personal injury statute of limitations when the effects of the exposure manifest themselves). It remains, however, that the injury of asbestos exposure was occasioned only by a prior injury also cognizable under section 1981, namely, Alcoa's racially discriminatory assignment of its African-American workers to the three departments in question. The plaintiffs' claim, therefore, clearly implicates the rule of *Delaware State College v. Ricks*, 101 S.Ct. 498, 504 (1980) (holding that the limitations period for employment discrimination claims begins to run from the date of the unfavorable employment decision). The proper focus of the limitations inquiry, therefore, must be on the time of that prior discriminatory act, and "not upon the time at which the *consequences* of [that act] became most painful." *Delaware State College*, 101 S.Ct. at 504.[8]

---

[8]We further observe that the focus on the racially discriminatory act is appropriate because this is a suit for racial discrimination under § 1981, not an ordinary personal injury suit. We further note in this connection that plaintiffs dropped their gross negligence claim after Alcoa's first motion

10

Having identified the relevant discriminatory act, it remains for us to determine the point at which the plaintiffs can be charged with knowledge of that act. "[A]n employee's claim accrues at the moment the employee believes (or has reason to believe) that he is the victim of discrimination." *Ramirez v. City of San Antonio*, 312 F.3d 178, 182 (5th Cir. 2002); *see also Blumberg v. HCA Mgmt. Co., Inc.*, 848 F.2d 642, 645 (5th Cir. 1988) ("The [period of prescription] begins when facts that would support a cause of action are or should be apparent.").

Plaintiffs' amended complaint never alleges or even remotely suggests that plaintiffs were not during their Alcoa employment

---

to dismiss which asserted that such claim would be barred by the exclusive remedy provisions of the Texas Workers' Compensation Act, it being undisputed that plaintiffs were Alcoa employees complaining of injuries sustained in the course and scope of their employment, and that Alcoa was a subscriber under the Texas Workers Compensation Act. Hence had this been a personal injury suit it would be precluded by the exclusive remedy provision of the Texas Workers Compensation Act. Tex. Lab. Code § 408.001. *See, e.g., Hoffman v. Trinity Industries*, 979 S.W.2d 88, 89 (Tex. App. Beaumont 1998, pet. dism'd by agr.).

Those similarly situated to plaintiffs would not, however, be without a remedy, for Workers Compensation benefits would be available provided they filed a claim within one year from when they knew or should have known that the occupational disease was related to their employment. See Tex. Lab. Code § 409.003:

> "An employee or a person acting on the employee's behalf shall file with the commission a claim for compensation for an injury not later than one year after the date on which:
> > (1) the injury occurred; or
> > (2) if the injury is an occupational disease, the employee knew or should have known that the disease was related to the employee's employment."

11

(and long before 1980) fully aware both of the discrimination being practiced against them and of its obvious effects (apart from asbestos). A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like. *See Taylor*, 296 F.3d at 378-79; *see also Kansa Reinsurance v. Congressional Mortg. Corp.*, 20 F.3d 1362, 1366-70 (5th Cir. 1994) (dismissing, under Rule 12(b)(6), a claim as time barred where the claim was clearly filed after the applicable statute of limitations had run and where it was evident from the pleadings that the plaintiff was not entitled to the benefit of the discovery rule); *Cross v. Lucius*, 713 F.2d 153, 156 (5th Cir. 1983); *see also* 5A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1990). Indeed it is apparent from the amended complaint that the plaintiffs then *did* have such awareness.[9] That is also consistent with the position taken by

_____

[9]*See, e.g.*, the following portions of the amended complaint:
"9.  The named Plaintiffs are of the African-American, or Negro race and were employed and worked primarily in only three departments: the pot lining department, the carbon plant, and the rod room at Alcoa's facility in Rockdale, Texas.
10.  All of the employees in these departments from the 1950s, when the plant opened, until the early 1970s were of the Negro race except the supervisors or the second classmen, i.e. crane operators, etc.
11.  As Negro employees, they were not allowed to use restroom and dining facilities utilized by the white employees, nor were they allowed advancement to other higher paying jobs in the other departments, rather, they were required to continue to work in the pot

plaintiffs in the district court.[10]

Plaintiffs could certainly have pursued a section 1981 claim decades earlier. Nor would *Patterson* have necessarily barred such a claim. It is the plaintiffs, after all, who characterize their assignment to the carbon plant and potlining department as conduct that occurred in the formation of their contracts. Because we conclude that the relevant unlawful employment practice must be defined as the plaintiffs' discriminatory assignment to, and denial

lining, the carbon plant and the rod room departments. Alcoa utilized this employment practice in its other similar facilities throughout the southern portion of the United States.
. . .
16. Throughout this period of time, with the exception noted above, Alcoa employed only employees of the Negro race in these departments."

[10]In an affidavit attached to the plaintiffs' response to Alcoa's motion for summary judgment, a former employee at the Rockdale plant stated that

"the Negro employees, were required to use separate restroom facilities as well as lunch room facilities. This separate use of facilities did not change until the early 1970s. Also black employees, even though qualified and with seniority, were not allowed to advance to supervisory or 'white' jobs in these departments, nor were we allowed to advance to certain jobs above the 'red line' which was a color line nor to jobs out of these departments."

Similarly, the testimony of Jones and Parks on deposition reflects that there were positions at the plant that African-Americans were not permitted to hold and that if they applied for could expect to be fired, that any promotions for African-Americans in the potlining and carbon areas were understood to be temporary until the position could be filled by a white, that African-American employees could not eat in the plant cafeteria and that the plant had separate restrooms and showers for black and white employees. Some of this testimony was cited in one of plaintiffs' briefs below.

13

of promotions from, the rod room, carbon plant, and potlining departments, and because the plaintiffs were admittedly aware of that practice long ago, we must also conclude that, under *Delaware State College v. Ricks*, the plaintiffs' section 1981 action against Alcoa is barred by the two-year statute of limitations.

We are not unmindful, however, of the possibility that the plaintiffs, though armed with the knowledge of Alcoa's racially discriminatory conduct, might have nevertheless concluded that they did not possess a viable claim under section 1981 against a private employer. That fact, however, cannot excuse delaying suit until the year 2000. There were indications as early as 1968, when the Supreme Court decided *Jones v. Alfred H. Mayer Co.*, 88 S.Ct. 2186 (1968), recognizing a cause of action under section 1982 against private property owners, that section 1981 would supply a remedy against private employers for racial discrimination in contracting. Indeed, soon after *Jones v. Alfred H. Mayer Co.*, a number of circuits began to apply section 1981 as a remedy for private discrimination. *See Johnson v. Railway Express Agency*, 95 S.Ct. 1716, 1720 n.6 (1975) (listing five circuits that had recognized, beginning in 1971, that section 1981 affords a remedy against discrimination in private employment on the basis of race). And certainly since 1975, following the Court's decision in *Johnson v. Railway Express Agency*, the plaintiffs can be said to have known that a claim against their employer for racial discrimination might

14

lie under section 1981.[11]

We are also aware that statutes of limitations, by "compel[ling] courts to determine that the defendant's right to be free of stale claims prevails over the plaintiff's desire to prosecute those claims," may sometimes bar otherwise meritorious actions, leaving certain conduct unpunished. *See Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 232 (5th Cir. 1984). Such limitations periods, however, reflect the valuable policy of requiring "the prompt vindication of known rights to ensure that the defendant is not prejudiced as a result of lost evidence, fading memories, and disappearing witnesses." *Id*. Moreover, holding a plaintiff responsible for a failure to take timely action to remedy known discrimination is consistent with our application of statutes of limitations in other areas. Thus in *Alberston v. T.J. Stevenson & Co.*, we found, under the Jones Act, that even where a plaintiff later discovers that an act of the defendant caused a more serious injury than the plaintiff first realized, the statute of limitations nevertheless will be found to have commenced running from the first point at which the plaintiff realized that he suffered harm, albeit minor, at the defendant's hands. *Id*. at

---

[11] We note also that there were indications, as early as 1982, that a cause of action could lie in this circuit under § 1981 for discrimination in the assignment of employees to different tasks in the workplace. *See Williams v. New Orleans Steamship Ass'n*, 673 F.2d 742, 746, 752–55 (5th Cir. 1982) (examining a claim of discriminatory assignment of longshoremen to deck and wharf jobs brought under Title VII and section 1981).

229 ("If *some* injury is discernable when the tortious act occurs, the time of event rule respecting statutes of limitations applies, and the plaintiff's cause of action is deemed to have accrued") (emphasis added).

Finally, we are unpersuaded by the plaintiffs' attempt to find refuge in the palliative language of a footnote of the Court's opinion in *Delaware State College v. Ricks*. In an attempt to avoid the sometime obdurate rule of *Delaware State College v. Ricks*, the plaintiffs point to the penultimate footnote of Justice Powell's opinion for the Court, in which he noted that "limitations periods should not commence to run so soon that it becomes difficult for a layman to invoke the protection of the civil rights statutes." *Delaware State College*, 101 S.Ct. at 506 n.16. We of course accept Justice Powell's caveat as a general proposition. What plaintiffs do not point out, however, is that in that same footnote, Justice Powell nevertheless held Ricks's claim to be barred since "there [could] be no claim . . . that Ricks was not abundantly forewarned" of the impending employment decision that ultimately formed the basis of his suit. Like Ricks, there is no allegation or indication that the plaintiffs here were not aware of the claimed racial discrimination decades before they brought suit. Nor do we see any danger that our application of the statute of limitations in this case risks undermining the protections of the civil rights statutes. The doctrines of equitable tolling and equitable

16

estoppel remain available to those plaintiffs who, through no fault of their own, might otherwise be barred from bringing a claim by operation of a statute of limitations. *See Ramirez v. City of San Antonio*, 312 F.3d 178, 183 (5th Cir. 2002) ("We have found that equitable tolling may be appropriate when 'the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.'"); *Tyler v. Union Oil Co. of California*, 304 F.3d 379, 391 (5th Cir. 2002) ("The doctrine of equitable estoppel 'may properly be invoked when the employee's untimeliness in filing his charge results from either the employer's deliberate design to delay the filing *or* actions that the employer should unmistakably have understood would result in the employee's delay.'").[12] The plaintiffs were certainly aware, decades before they brought suit, that they had been the victims of racial discrimination and they have never alleged otherwise. We discern nothing in the record suggesting that they are entitled to any type of equitable tolling.

IV.

Because we find, under the rule of *Delaware State College v. Ricks*, that the plaintiffs' claim is barred by Texas's two-year

---

[12] Finally, we would observe that our decision would not leave similarly situated plaintiffs without a remedy for asbestos-related diseases incurred in the workplace. Workers compensation benefits would remain available. See last paragraph of note 8 *supra*.

statute of limitations, we AFFIRM the judgment of the district court dismissing the plaintiffs' action for failure to state a claim.

AFFIRMED.