# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 27, 2012

No. 12-30206
Summary Calendar

Lyle W. Cayce
Clerk

NATHANIEL JOSEPH; KECIA JOSEPH; LUCINDA MITCHELL,

Plaintiffs-Appellants

v.

BACH & WASSERMAN, L.L.C.; GERALD WASSERMAN,

Defendants-Appellees

Appeal from the United States District Court for the
Eastern District of Louisiana
USDC No. 2:11-cv-1276

Before BENAVIDES, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:*

Plaintiffs-Appellants Nathaniel and Kecia Joseph ("the Josephs") and
Lucinda Mitchell appeal from the district court's grant of Defendants-Appellees
Bach and Wasserman, L.L.C.'s and Gerald Wasserman's motion to dismiss.
Because we find that the statute of limitations has run on their federal claim, we
AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 12-30206

## I. BACKGROUND

In May 2002, the Josephs received a settlement from a personal injury matter. They invested the money in different ventures, including several retail food trailers. They purchased two new food units for their business from Customs Sales ("Customs"), paying for the smaller unit in full and leaving $135,000 as a non-refundable deposit on the larger unit. The Josephs' parents, Frank and Lucinda Mitchell, continued to operate one of the food trailers with the smaller unit, while the Josephs began to make improvements on their property in Jean Lafitte, and on a 26-unit apartment complex they owned.

The larger food unit was delayed, and the Josephs ran into problems with the improvements on their properties. Therefore, they advised Customs that their financial condition had deteriorated and they would need more time to come up with the balance due on the larger unit, which was now $175,000. Customs told the Josephs that the deposit was non-refundable and they would lose both the deposit and the unit if they did not pay the remainder upon delivery, so the Josephs contacted Pontchartrain Mortgage seeking financial assistance. They were unable to qualify for a personal or business loan, but Pontchartrain Mortgage introduced them to Defendant-Appellee George Wasserman for the purpose of either making them a small loan or purchasing an existing loan. Customs then spoke to Wasserman, and the larger unit arrived in a few days. Customs also told the Josephs that they would have two days to complete the closing or return the unit if the balance was not paid.

The Josephs allege that Wasserman changed the terms of the loan he had agreed to make them once the unit was delivered, knowing that they would feel forced to comply or lose the unit and their deposit. Eventually, through a series of vague and allegedly fraudulent transactions, Wasserman owned the Josephs' fully-paid home and was leasing it back to them, had arranged for other

2

investors to obtain mortgages on their property, had placed collateral mortgages on the Josephs' property, including the apartment complex and food trailers, and was handling all Department of Housing and Urban Development ("HUD") documentation and monies on their mortgages.     They also allege that Wasserman did not put the Josephs on the insurance policy for the Jean Lafitte property, though he charged them insurance premiums on that property and had given them a lease that stated that they were included as insureds.  By January 2004 Wasserman allegedly asserted that the Josephs owed him $375,000, and he was requiring that they make monthly payments on that debt, though he was collecting revenue from their assets at the same time.

The Plaintiffs-Appellants state that in February 2004, the Josephs learned that they *did not owe* Wasserman $375,000, and that he had charged them exorbitant fees on the sales and mortgages he had prepared for them.  They had an attorney request that Wasserman make a full accounting of their funds and property, which he allegedly refused to do.  Accordingly, in December 2004, the Josephs filed suit against the Defendants-Appellees in Civil District Court for the Parish of Orleans, and, in January 2005, Mitchell's Fruit Stand, Inc., Frank Mitchell, and Lucinda Mitchell filed a motion to intervene, adopting the allegations contained in the Josephs' petition.  The state court granted an Exception for Vagueness filed by the Defendants-Appellees, but gave the Plaintiffs-Appellants fifteen days to cure the deficiencies in their pleadings, and told them that it would dismiss their case with prejudice if they did not amend their pleadings within that time.  Fifteen days passed without the Plaintiffs-Appellants filing an amended petition, and the state court therefore dismissed their claims with prejudice.

On May 28, 2011, the Plaintiffs-Appellants filed a complaint in federal district court, alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 ("RICO"), and also bringing state-law

No. 12-30206

claims for intentional infliction of emotional distress, fraud, theft and misrepresentation, violations of the Louisiana Unfair Trade Practices and Consumer Protection Act, and violations of the Louisiana Racketeering Act. The Defendants-Appellees filed a motion to dismiss, or, in the alternative, motion for summary judgment, which the Plaintiffs-Appellants opposed. On February 8, 2012, the district court granted the Defendants-Appellees' motion to dismiss the Plaintiffs-Appellants' RICO claim, and it declined to exercise supplemental jurisdiction over their state-law claims. The Plaintiffs-Appellants timely filed this appeal.[1]

## II. STANDARD OF REVIEW

We review a district court's grant of a motion to dismiss de novo, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks and citation omitted). When the ground for dismissal is a statute of limitations, it must be "evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

## III. ANALYSIS

The district court dismissed the Plaintiffs-Appellants' RICO claim on the basis that it was time-barred. Civil RICO claims have a four-year statute of limitations. *Rotella v. Wood*, 528 U.S. 549, 552 (2000)*; Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 156 (1987). This Circuit has adopted an "injury discovery rule," whereby "a civil RICO claim accrues when the plaintiff discovers, or should have discovered, the injury." *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 773 (5th Cir. 2000) (citing *Rotella v. Wood*, 147 F.3d 438, 400 (5th Cir. 1998), *aff'd.* 528 U.S. 549 (2000)). It is discovery of the injury, and

---

[1] The Plaintiffs-Appellants appeal only the district court's dismissal of their RICO claim.

not other elements of a RICO claim, that starts the limitations period running. *Rotella*, 528 U.S. at 556. In *Love*, this Court also adopted the "separate accrual rule," stating that "[w]hen a pattern of RICO activity causes a continuing series of separate injuries, the 'separate accrual' rule allows a civil RICO claim to accrue for each injury when the plaintiff discovers, or should have discovered, that injury." 230 F.3d at 773.

The district court found that the Josephs' state-court petition alleged the same injuries as those complained of in this suit, such that they had no new and independent injuries after December 2004, when the state-court petition was filed. Similarly, the court held that the latest the statute could have begun to run against Mitchell was January 2005, when she filed her petition in intervention in the state-court suit. Thus, the Plaintiffs-Appellants' federal complaint, filed in May 2011, was well beyond the four-year statute of limitations. The court also found that even if, as alleged, Wasserman had continued to conceal information from the Plaintiffs-Appellants after 2004, "[a]lleged concealment . . . does not constitute the accrual of a new injury."

On appeal, the Plaintiffs-Appellants argue that their claims are timely under both the injury discovery and separate accrual rules. As to the former, they rely on *Burnett v. New York Central Railroad Company*, in which the Supreme Court held that the plaintiff's state-court suit tolled the federal statute of limitations on a Federal Employers' Liability Act ("FELA") claim. 380 U.S. 424 (1965). Plaintiffs-Appellants' reliance on *Burnett* is misplaced, however. Beyond the fact that *Burnett* dealt with FELA and not RICO, the plaintiff in that case had initially filed his FELA claim in state court, within the limitations period. *Id*. at 424-45. When his state suit was dismissed on the basis of improper venue, he refiled in federal court eight days later, but the district court held that the suit was untimely under the FELA three-year statute of limitations, and the Court of Appeals affirmed. *Id*. at 425. The Supreme Court

reversed, holding that "when a plaintiff begins a timely FELA action in a state court having jurisdiction, and serves the defendant with process and plaintiff's case is dismissed for improper venue, the FELA limitation is tolled during the pendency of the state suit." *Id.* at 434-35. Here, the Plaintiffs-Appellants waited six years to file an action in federal court, rather than doing it almost immediately, as did the plaintiff in *Burnett*. *See Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."); *Covey v. Ark. River Co.*, 865 F.2d 660, 662 (5th Cir. 1989) (stating that "factors to consider in determining whether to apply equitable tolling include diligence on the part of the party bringing the action, and timely service of process"). Furthermore, the Plaintiffs-Appellants did not file a RICO claim in state court. Instead, their state-court action involved only state-law claims. Therefore, whether or not the state-court action is still open on appeal, as they claim, it would not toll the statute of limitations on this separate federal claim, such that *Burnett* is inapposite.

The Plaintiffs-Appellants also argue that Wasserman fraudulently concealed his actions and their consequences and continues to do so, such that the Plaintiffs-Appellants "are still in the dark regarding their injuries and the extent of those injuries." Under the doctrine of fraudulent concealment, "the limitations period is tolled until the plaintiff discovers, or with reasonable diligence should have discovered, the concealed fraud." *Love*, 230 F.3d at 779. However, based on the Plaintiffs-Appellants' complaint, as well as their brief to this Court, they have suffered no injury due to an action taken by Wasserman since March 2004, and they ceased making payments to him early that year as well. In addition, as the district court found, their federal complaint tracks that filed in state court, word-for-word in places, and alleges no new injuries incurred after the filing of their state-court petition. *See Warden v. Barnett*, 252 F.3d

1356, at *1 (5th Cir. 2001) (unpublished) ("The state court complaint makes clear that at the time it was filed Barnett was aware of the alleged injury, i.e., the misappropriation of his stock, that is the basis of the RICO claim brought in federal court seven years later. We agree with the district court's conclusion that the state court suit alleged 'the same basic facts' and 'the same basic grounds' as the federal RICO claim. Barnett claims that Parker and Nichols engaged in fraudulent concealment of their wrongful conduct. But if Barnett knew in 1991 that these third-party defendants had misappropriated his stock, then under the injury discovery rule he was aware of his injury and the limitations period ran long before the 1998 federal RICO claim was filed.").

The Plaintiffs-Appellants further claim that Wasserman's continuing illegal possession of their property is a continuing tort, and the separate accrual rule applies. They point to *Love* for support, but that case is distinguishable. In *Love*, Blue Cross Blue Shield of Texas ("BCBST") sued National Medical Enterprises ("NME"), a corporation running psychiatric hospitals, alleging that NME had used deceptive practices to recruit patients and had based discharge decisions on insurance coverage. 230 F.3d at 768. NME argued that the statute of limitations had run on BCBST's RICO claim. We held, however, that the separate accrual rule applied, and BCBST could maintain suit for allegedly fraudulent insurance claims submitted within the limitations period, even though NME's scheme to defraud had allegedly arisen prior to that time. We reasoned that "[e]ach time BCBST became obligated to pay a fraudulent (assumed) insurance claim submitted by Appellees, BCBST suffered an injury 'to its business or property', within the meaning of [the RICO statute]." *Love*, 230 F.3d at 775. Here, however, Plaintiffs-Appellants have not shown any harm or injury from the alleged illegal possession occurring within the limitations period. Consequently, there have been no new injuries equivalent to the fraudulent claims paid by BCBST. *C.f. Jaso v. The Coca Cola Co.*, 435 Fed.

No. 12-30206

App'x 346, 355 (5th Cir. 2011) (per curiam) (stating that the appellant "has alleged that individual acts of racketeering occurred within the limitations period").

Even if Wasserman continued to make a profit off of the Plaintiffs-Appellants' property that he allegedly illegally possessed, it is the initial taking of that property, not any further actions Wasserman took with it, that constitutes a RICO injury. *See Warden*, 252 F.3d at *1 ("We agree with the district court that the initial theft or misappropriation of Barnett's stock is his injury, and that further alleged acts of appellees, such as placing the proceeds of the sale of the stock in a trust, do not amount to new and independent injuries subject to separate limitations periods."). Thus, though Wasserman may have concealed how much money he made off of the Plaintiffs-Appellants' property, there are no allegations that he has taken any property, or collected money on their behalf, since 2004.

Plaintiffs-Appellants do allege that in February 2011 Nathaniel Joseph contacted an insurance agent to get an update on a 2005 lawsuit against the Plaintiffs-Appellants regarding the Jean Lafitte property, and found out that the Josephs had never been added as insureds on the property. The Plaintiffs-Appellants allege that under the Josephs' lease agreement with Wasserman, they were to pay for additional insurance on the property and were to be listed as insureds on the policy. Obviously, an injury arising in February 2011 would be timely for purposes of a federal RICO claim filed in May of that year. However, we do not find that this injury arose in February 2011, or was concealed from Plaintiffs-Appellants until that date. Instead, they should have been aware of their status as insureds in May 2005, when they were sued by two people injured on the property. Furthermore, the Defendants-Appellees note that Wasserman and the insurance company asserted a cross-claim and third-party demand against the Josephs and Mitchell in that suit, which clearly

8

No. 12-30206

should have put them on notice that they were not covered under the insurance policy at issue.[2] Accordingly, we find that the Plaintiffs-Appellants should have discovered in 2005 that they were not covered under the insurance policy on the Jean Lafitte property, such that the statute of limitations on that claim has run, as well.

Finally, Plaintiffs-Appellants argue that the district court should have permitted them to amend their complaint, rather than dismissing their case with prejudice. However, they never requested leave to amend from the district court, nor have they indicated what they would add to their complaint if allowed to amend. We therefore find that the district court properly dismissed the RICO claim without giving the Plaintiffs-Appellants the opportunity to amend their complaint. *See Griego v. Bexar Cnty., TX*, 244 F.3d 133, at *1 (5th Cir. 2000) (per curiam) ("Griego did not request leave to amend in the district court, and in his appellate brief he indicates that his initial complaint was adequate. Further, in his brief he has failed to suggest with any specificity what could be added to his claim if he were allowed to replead. Accordingly, the dismissal of Griego's complaint without affording him a chance to amend was proper.").

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's dismissal of Plaintiffs-Appellants' suit.

---

[2] The Defendants-Appellees reference a copy of the third-party complaint in the record in support of their argument. In general, a court may only look to "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint" when reviewing a 12(b)(6) motion to dismiss. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). However, the court may take judicial notice of matters of public record. *Funk v. Stryker Corp.*, 631 F.3d 777 (5th Cir. 2011). Here, the document referenced is a pleading filed with a Louisiana state district court, and it is a matter of public record.