# United States Court of Appeals for the Fifth Circuit

_____

No. 25-20339

_____

United States Court of Appeals
Fifth Circuit

**FILED**

May 18, 2026

Lyle W. Cayce
Clerk

Hector Xavier Cortez,

*Plaintiff—Appellant*,

*versus*

Marco Rubio, *Secretary, U.S. Department of State*,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:25-CV-171

_____

Before Higginbotham, Smith, and Oldham, *Circuit Judges*.
Jerry E. Smith, *Circuit Judge*:

Hector Cortez challenges the dismissal of his claims under 8 U.S.C. § 1503(a), the Administrative Procedure Act ("APA"), and the Mandamus Act. He claims that he was born in Laredo, Texas. About a decade ago, Cortez used his U.S. passport to travel to Mexico, where he reported his passport stolen. He purportedly found his passport days later. When he returned to the United States, his passport was retained. Since then, he has filed at least four passport applications, all of which have been denied.

The Department of State ("DOS") has noted questionable circum-

stances involving Cortez's purported United States birth. For one, his birth attendant, who filed the "Laredo" birth certificate, had been suspected of submitting false birth records. Second, Cortez had a conflicting Mexican birth certificate, one that he failed to clarify despite DOS's numerous requests. Nor did he provide sufficient early life records to substantiate his birthplace.

We dismiss the Section 1503 and constitutional claims for failure to state a claim; remand is futile. We affirm the dismissal of the APA and Mandamus Act claims.

## I. Facts
### A. First Passport Denial

Cortez supposedly found his passport days after reporting it stolen and traveled to Houston, where his passport was retained. As a precondition to issuing a replacement in 2013, DOS requested "additional information about his birth, particularly early life records." "At the time of [his] application," Cortez "w[as] given a letter identifying additional information or documents that [he] needed to provide to complete processing [his] citizenship service." Cortez never provided the information. His passport application was denied.

### B. Second Passport Denial

Cortez reapplied for a passport that same year. DOS requested additional information because his "birth record was filed on February 14, 1977[,] by a birth attendant [] suspected of submitting false birth records." Months later, DOS sent another letter requesting additional information after discovering a conflicting birth certificate recorded on April 21, 1977, in "San Nicolas De Las Garza, Nuevo Leon, Mexico." Cortez needed to "submit a statement explaining why the foreign document [(Mexican birth certificate)] was filed and when/how [he] became aware that conflicting birth records

existed." DOS requested "[e]arly documents showing [his] place of birth such as church, school or medical records" and his "parents' border crossing cards, passports or other evidence of their presence in the United States near [his] date of birth."

In March 2015, DOS indicated that Cortez had "not submitted any records to support [his] mother's physical presence in the United States at the time of [his] birth." In fact, "[a]ll of the supporting evidence that was submitted and/or found show[ed] [his] place of birth as Mexico." Because Cortez's documentation was "not sufficient to establish by a preponderance of the evidence that [he] w[as] born in the United States," DOS was "unable to determine that [he was] entitled to a passport" and denied his application.

## C. Third Passport Denial

About four years later, Cortez reapplied for a passport. Again, DOS asked him to submit "a statement explaining why the [Mexican birth certificate] was filed and when/how [he] became aware that conflicting birth records existed." Though DOS indicated that Cortez was ineligible for passport services because he owed child support that year, a same-day letter explained that he had not explained the conflicting Mexican birth certificate or submitted previously requested birth records. Cortez allegedly "sought no further action at that time."

## D. Fourth Passport Denial

In 2021, Cortez filed another passport application, which was similarly denied three years later because of the conflicting Mexican birth certificate and insufficient documentation. After Cortez requested re-adjudication, DOS reaffirmed the denial and clarified that "[n]o further review w[ould] be provided absent the filing of a new fee paid application."

No. 25-20339

### E. Procedural History

In 2025, Cortez filed a petition for writ of mandamus and declaratory judgment, asserting claims under 8 U.S.C. § 1503(a); the APA; the Mandamus Act; Article IV's "full faith and credit clause"; and the Fifth, Tenth, and Fourteenth Amendments. The district court granted the motion to dismiss.

### II. Federal Rule of Civil Procedure 12(b)(6)

We dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). On a motion to dismiss, "[w]e accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004) (citation omitted). But "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 362 (5th Cir. 2003) (citations and internal quotation omitted).

### III. 8 U.S.C. § 1503(a)

Cortez's Section 1503(a) claim is time-barred, equitable tolling is not warranted, and remand is futile. We dismiss Cortez's Section 1503(a) claim for failure to state a claim.[1]

DOS can issue passports "only to a U.S. national." 22 C.F.R. § 51.2(a). Each applicant has "the burden of proving that he or she is a U.S. citizen or non-citizen national." 22 C.F.R. § 51.40. Section 1503(a) provides,

> If any person who is within the United States claims a right

---

[1] *See Jones*, 339 F.3d at 366 ("A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like.") (citations omitted).

or privilege as a national of the United States and is denied such right or privilege . . . upon the ground that he is not a national of the United States, such person may institute an action under [28 U.S.C. § 2201] against the head of [the] department or independent agency for a judgment declaring him to be a national of the United States.

8 U.S.C. § 1503(a). Importantly, such an action "may be instituted only within five years after the final administrative denial of such right or privilege[.]" *Id.* This time bar is a "nonjurisdictional claims-processing rule." *Villegas v. Noem*, 149 F.4th 554, 568 (5th Cir. 2025). "[T]he final administrative denial" is the "first final administrative denial." *Gonzalez v. Limon*, 926 F.3d 186, 190 (5th Cir. 2019). "[W]e interpret *Gonzalez* as focusing on the reasonable finality of a particular claim's proceedings, not searching for the first possible instance of finality." *Villegas*, 149 F.4th at 570 (emphasis omitted).

## A. Five-Year Time Bar

Cortez's Section 1503(a) claim is time-barred. Indeed, he filed a district court complaint in 2025, more than five years after being denied replacement passports. But Cortez contends that *none* of the denials could have started the five-year clock because none constituted a final decision "upon the ground that he is not a national of the United States." His theory is unavailing for several reasons.

*First*, we join the sound judgment of our sister circuits, which have interpreted passport denials for "lack of identity" as "necessarily [] on the ground" that a person is not "a national of the United States."[2]

---

[2] *See Chin Chuck Ming v. Dulles*, 225 F.2d 849, 853 (9th Cir. 1955) ("Refusal for lack of identity of the applicant necessarily is on the ground that he is not the person claiming to be 'a national of the United States.' Similarly, with a refusal for lack of evidence that he is a national, or because in the applicant's proof of his nationality he committed a fraud and

No. 25-20339

*Second*, the 2013 denial was the "first final administrative denial" for the purposes of Section 1503(a)[3] and the "reasonable finality" of the proceedings.[4] After all, DOS requested the requisite information "[a]t the time of [his] application," and Cortez did not provide it. That subsequent denials may have been more detailed does not change the calculus. In fact, subsequent denials were predicated on insufficient documentation despite DOS's consistent requests for specific documents.

*Third*, neither Cortez's subsequent applications nor any corresponding denials reset the five-year time bar.[5] We express great skepticism that an enterprising plaintiff can successfully invoke the "qualitative differences" test to circumvent the unambiguous textual command of the five-year time bar. Notably, Cortez presents no intervening determination that he was declared a United States citizen or national between any applications. No amount of stylized reasoning can allow a party to claim that there are "qualitative differences" in the absence of this intervening determination.

––––––––––––––––––––––––––

hence had not proved he was such a national."); *see also Lee Wing Hong v. Dulles*, 214 F.2d 753, 756–57 (7th Cir. 1954) ("The argument that a refusal to issue a passport because of insufficient proof of identity is not a denial within the meaning of the statute of the right or privilege claimed by plaintiffs is without support, either in reason or common sense. The predicament of the aggrieved party is no different than if he had been denied a passport on the express basis that he was not a national."); *see also Heuer v. U.S. Sec'y of State*, 20 F.3d 424, 426 (11th Cir. 1994) (per curiam) ("We note that the denial of an application for a United States passport is a denial of a right or privilege on a claim as a United States national, and that the denial stems from an administrative proceeding.").

[3] *See Gonzalez*, 926 F.3d at 190.

[4] *See Villegas*, 149 F.4th at 570.

[5] *See id.* at 569 ("It is also true that the limitations period [of § 1503(a)] is not reset by means of a follow-on denial.") (internal quotations and citations omitted); *see also Gonzalez*, 926 F.3d at 190 ("While the text is silent regarding duplicative denials, in defining a limitations period, Congress expressed its interest in finality. Implicitly authorizing a series of duplicative claims would frustrate that interest.").

No. 25-20339

## B. Equitable Tolling

Even though the time bar is a "nonjurisdictional claims-processing rule,"[6] equitable tolling is not justified here.[7] Equitable tolling is available only in "rare and exceptional circumstances." *See Felder v. Johnson*, 204 F.3d 168, 170–71 (5th Cir. 2000). Still, Cortez claims that DOS issued "ambiguous denials"; "deprived [him] of notice"; "misled him as to when (if ever) the five-year clock began"; and "r[a]n out the clock." To the contrary: On many occasions, DOS outlined the reasons for its denial, articulated the legal standard not met, and provided a timeline to "rebut[] the [denial letter's] conclusions" or "proceed with available legal remedies." Neither the number of repeated applications nor corresponding denials can demonstrate that Cortez "pursu[ed] his rights diligently" and "some extraordinary circumstance stood in his way." *See Credit Suisse*, 566 U.S. at 227 (quoting *Pace*, 544 U.S. at 418).

Remand is futile.[8] We dismiss Cortez's Section 1503(a) claim. *See Jones*, 339 F.3d at 366.

## IV. Federal Rule of Civil Procedure 12(b)(1)

Federal courts are obliged to dismiss if a plaintiff fails to establish subject-matter jurisdiction. FED R. CIV. P. 12(b)(1). Indeed, "[i]t is incumbent on all federal courts to dismiss an action whenever it appears that subject[-]matter jurisdiction is lacking." *Stockman v. FEC*, 138 F.3d 144, 151

---

[6] *See Villegas*, 149 F.4th at 568.

[7] *See Credit Suisse Secs. (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) *that he has been pursuing his rights diligently*, and (2) that some extraordinary circumstance stood in his way.") (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

[8] *See Lopez-Perez v. Garland*, 35 F.4th 953, 956 (5th Cir. 2022) (noting that our court "will not remand if doing so will be futile").

(5th Cir. 1998). "A case is properly dismissed for lack of subject[-]matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted). "[T]he party asserting federal jurisdiction [] bears the burden of demonstrating that jurisdiction is proper." *Stockman*, 138 F.3d at 151 (citation omitted).

## V. APA and Mandamus Act

The APA and Mandamus Act claims are jurisdictionally barred.

"Congress intended § 1503(a) to be the exclusive remedy for a person within the United States to seek a declaration of U.S. nationality following an agency or department's denial of a privilege or right of citizenship upon the ground that the person is not a U.S. national." *Cambranis v. Blinken*, 994 F.3d 457, 466 (5th Cir. 2021).

## A. APA

We dismiss the APA claim for want of subject-matter jurisdiction.

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. But the APA provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.[9]

Cortez's APA claim is jurisdictionally barred because Section 1503(a)

_____

[9] *See also Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) ("Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action.").

No. 25-20339

provides an adequate remedy at law.[10]  That Cortez did not timely invoke the Section 1503(a) remedy does not change the calculus.[11]

## B. Mandamus Act

The Mandamus Act claim is similarly barred.

Under the Mandamus Act, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  Mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes."[12]  To maintain a mandamus claim, "[a] plaintiff must show a clear right to the relief sought, a clear duty by the defendant to do the particular act, and that no other adequate remedy is available."  *Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2002) (citations omitted).  "Mandamus is not available to review discretionary actions of agency officials."  *Id.* (citation omitted).

Cortez's claim for mandamus relief is meritless for several reasons. First, he has not "show[n] a clear right to the relief sought."  *See id.*  Second,

---

[10] *See Flores v. Pompeo*, 936 F.3d 273, 277 (5th Cir. 2019) (concluding that Section "1503(a) is an adequate alternative remedy for [the plaintiff's] injury, and that the district court was therefore correct that it lacked jurisdiction over his claim under the APA").

[11] *See Martinez v. Pompeo*, 977 F.3d 457, 460 (5th Cir. 2020) ("We agree with our sister circuits' uniform conclusion that '[a] legal remedy is not inadequate for purposes of the APA because it is procedurally inconvenient for a given plaintiff, or because plaintiffs have inadvertently deprived themselves of the opportunity to pursue that remedy.'") (citations omitted); *see also id.* at 459–60 (holding that the Section "1503 claim remained an 'adequate and available remedy' despite the limitation problem").

[12] *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (internal quotations omitted); *see also Carter v. Seamans*, 411 F.2d 767, 773 (5th Cir. 1969) ("It is hornbook law that mandamus is an extraordinary remedy which should be utilized only in the clearest and most compelling of cases.") (citations omitted).

Section 1503(a) provides an adequate remedy.[13] Third, DOS's decision to deny a passport application is a discretionary one.[14]

The district court did not abuse its discretion by declining to exercise jurisdiction over Cortez's mandamus claim.

## VI. Constitutional Claims

We dismiss Cortez's constitutional claims for failure to state a claim. "[T]hat Congress [] provided a cause of action under [Section] 1503 precludes finding an implied private right of action under the Constitution."[15]

### A. Article IV

Cortez forfeited his Full Faith and Credit Clause argument.[16] He does not articulate on appeal why the Texas Department of Health's decision, that he was born in the United States, should be given full faith and credit.

------

[13] *See Cartier v. Sec'y of State*, 506 F.2d 191, 200 (D.C. Cir. 1974) ("In the instant case the alternative of a judicial declaration of nationality under 8 U.S.C. § 1503 is more than adequate to provide appellee all the relief he has sought by mandamus."); *see also Parham v. Clinton*, 374 F. App'x 503, 504 n.1 (5th Cir. 2010) (per curiam) ("In addition, the district court properly held that Appellants have failed to plead or argue the necessary elements for mandamus under 28 U.S.C. § 1361.") (citing *Cartier*, 506 F.2d at 200).

[14] *See* 22 U.S.C. § 211a ("The Secretary of State *may* grant and issue passports.") (emphasis added); *see also Haig v. Agee*, 453 U.S. 280, 290 (1981) ("It is beyond dispute that the Secretary has the power to deny a passport for reasons not specified in the statutes.").

[15] *See Tankoano v. USCIS*, 652 F. Supp. 3d 812, 816 (S.D. Tex. 2023) ("The fact that Congress has provided a cause of action under 8 U.S.C. § 1503 precludes finding an implied private right of action under the Constitution.") (citing *Jud. Watch, Inc. v. Rossotti*, 317 F.3d 401, 413 (4th Cir. 2003) ("Even if 'Congress has provided a less than complete remedy for the wrong,' any decision to create a new judicial remedy must be 'exercised in the light of relevant policy determinations made by the Congress.'")) (citations omitted).

[16] *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("[W]aiver is the intentional relinquishment or abandonment of a known right.") (citation and internal quotation omitted).

No. 25-20339

## B. Fifth Amendment

Cortez has not sufficiently alleged a due process violation under the Fifth Amendment. He theorizes that the "action of denying a passport based on conflicting birth information is a violation of due process as protected by the Fifth Amendment" and that the "[d]enial of a passport [] directly restricts a citizen's fundamental right to international travel." Though "[t]he constitutional right of interstate travel is virtually unqualified," "the right of international travel . . . can be regulated within the bounds of due process." *Califano v. Aznavorian*, 439 U.S. 170, 176 (1978) (citations and internal quotations omitted).

Cortez has not alleged a deprivation of "a liberty or property interest."[17] Officials did not impose unconstitutional restrictions on his freedom of movement for an obvious reason—his "application was denied for [] lack of documentation" that all applicants need to furnish.[18] In other words, Cortez "is not subject to any governmental restraint that is not shared generally by the general public."[19] Everyone must show a passport at a U.S. port of entry, and everyone must prove passport eligibility. Cortez cannot bootstrap a citizenship challenge into a due process one.[20]

---

[17] *See Welch v. Thompson*, 20 F.3d 636, 639 (5th Cir. 1994) ("We analyze procedural due process questions using a two-step inquiry: First, we determine whether the state has deprived a person of a liberty or property interest; if there has been such a deprivation, we must determine whether the procedures relative to that deprivation were constitutionally sufficient.").

[18] *See Sanchez v. Clinton*, No. Civ.A. H-11-2084, 2012 WL 208565, at *6 (S.D. Tex. Jan. 24, 2012) (unpublished) ("Because [the plaintiff's] passport application was denied for lack of the documentation that all citizens are required to provide, he does not allege facts showing that federal officials have imposed unconstitutional restrictions on his freedom of movement.").

[19] *See id.*

[20] *See Rios-Valenzuela v. DHS*, 506 F.3d 393, 401 (5th Cir. 2007) ("declin[ing] the

No. 25-20339

Because Cortez has not alleged facts demonstrating that officials imposed unconstitutional restrictions on his freedom of movement, we dismiss his Fifth Amendment claim.

## C. Tenth Amendment

Cortez forfeited his Tenth Amendment argument because he fails to make any such substantive argument on appeal, contrary to what he did at the district court.[21] Indeed, the "Tenth Amendment" earns one fleeting reference, which is merely a characterization of DOS's district court argument.

## D. Fourteenth Amendment

Cortez does not sufficiently allege a Fourteenth Amendment violation. He merely posits that our court's precedent, not DOS's conduct, violated his Fourteenth Amendment rights. Even so, the "due process analysis is the same . . . under the Fifth Amendment."[22] We reject his Fourteenth Amendment argument.

AFFIRMED.

------------------------

invitation" "to find that a due process right inheres naturally in a claim to citizenship itself").

[21] *See Rollins*, 8 F.4th at 397.

[22] *See Welch*, 20 F.3d at 639 ("[T]he due process analysis is the same in measuring the Louisiana statute against the strictures of the Fourteenth Amendment as it would be under the Fifth Amendment.") (citing *Burstein v. State Bar of Cal.*, 693 F.2d 511, 516 n.8 (5th Cir. 1982)).